# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TRAVIS RYAN YOUNG, | § | Case No. 17-30163-hcm |
| | § | |
| Debtor. | § | |
| _____ | § | |
| | § | |
| PAMELA YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 17-03010-hcm |
| | § | |
| TRAVIS RYAN YOUNG, Individually | § | |
| and d/b/a PREMIER BUILDERS, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S SECOND MOTION TO COMPEL AND
## FOR SANCTIONS AGAINST BRITTANY YOUNG

TO THE HONORABLE H. CHRISTOPHER MOTT, U.S. BANKRUPTCY JUDGE:

COMES NOW Plaintiff, PAMELA YOUNG (hereinafter "Plaintiff"), by and through her attorneys, James & Haugland, P.C., and files this, her Second Motion to Compel and for Sanctions Against Brittany Young and in support thereof would respectfully show the Court the following:

# I. FACTS

### A. The Debtor Files Bankruptcy and Refuses to Provide Bank Statements or Other Information Regarding His Wife, Brittany Young, Because They Are Separate Property Pursuant to a Written Marital Property Agreement

1.    On February 3, 2017, Travis Ryan Young (hereinafter "Debtor") filed a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code [Bankr. Doc. # 1].

2.    In his April 4, 2017 2004 Examination, the Debtor testified that he has been engaged in the home building business since approximately 2008.[1]  See Exhibit P-1 at 7:6-12. The Debtor also testified that Brittany Young is his wife.  See Exhibit P-1 at 18:5-6. Debtor further testified that he entered into a written martial agreement with Brittany Young approximately two years ago in which they agreed that their bank accounts and income would be separate property.  See Exhibit P-1 at 24:11-25:17.  Debtor stated that he did not produce any bank account statements for Brittany Young at the 2004 Examination because they are her separate property.  See Exhibit P-1 at 23:25-24:10; 49:8-12.

### B. Plaintiff Files This Adversary and Serves a Subpoena and Third Party Request for Production on Brittany Young

3.    On May 5, 2017, Plaintiff, a creditor of the Debtor, filed this adversary proceeding objecting to the discharge of the Debtor. [Adv. Doc. # 1].

4.    On September 14, 2017, Plaintiff filed a Notice of Third Party Requests for

---

[1]A true and correct copy of the transcript of the April 4, 2017 Oral Deposition of Travis Young (a Ruel 2004 Examination) is attached hereto as Exhibit P-1 and incorporated herein by reference.

Production regarding Debtor's wife Brittany Young in this adversary proceeding. [Adv. Doc. # 21]. As set forth in the Notice of Third Party Requests for Production, the Plaintiff requested approximately seventy categories of documents from Brittany Young for the time period from January 1, 2013 through January 31, 2017. [Adv. Doc. # 21, Documents To Be Produced].

5.    On September 14, 2017, the Plaintiff, through her counsel, issued a Subpoena for Brittany Young to produce the documents set forth in the Notice of Third Party Requests for Production. [Adv. Doc. #24]. The September 14, 2017 Subpoena directed Brittany Young to produce the requested documents no later than October 20, 2017 at the Law Offices of James & Haugland, PC. [Adv. Doc. #24]. The September 14, 2017 Subpoena was served on Brittany Young on September 15, 2017. [Adv. Doc. #24].

6.    On October 2, 2017, Michael R. Nevarez, attorney for Debtor, filed a Motion to Quash the Subpoena. [Adv. Doc. # 22].

7.    On October 26, 2017, after a hearing on the Motion to Quash, the Court entered an order modifying the September 14, 2017 Subpoena to limit some of the categories of documents requested (hereinafter the "First Order")[2] [Adv. Doc. # 30]. The First Order also provided that Brittany Young shall produce the documents requested by Plaintiff in the Subpoena as modified by November 16, 2017. [Adv. Doc. # 30].

---

[2] A true and correct copy of the Order Modifying Subpoena Issued To Brittany Young in Adversary Proceeding No. 17-03010 is attached hereto as Exhibit P-2 and incorporated herein by reference.

8. On October 26, 2017, Plaintiff filed an Amended Notice of Third Party Requests for Production to Brittany Young in conformity with the Court's First Order.[3] [Adv. Pro. 31, 34]. On that same day, the Plaintiff issued a Subpoena for Brittany Young (hereinafter the "Subpoena") to produce the documents set forth in the Amended Notice of Third Party Requests for Production. Exhibit P-3. The Subpoena directed Brittany Young to produce the requested documents no later than November 16, 2017 at the Law Offices of James & Haugland, PC. Exhibit P-3. The Subpoena was served on Brittany Young on October 27, 2017. Exhibit P-3.

### C. Brittany Young Fails and Refuses to Comply with the Subpoena and Plaintiff Files Her First Motion to Compel, for Contempt, and for Sanctions

9. Brittany Young wholly failed to respond to the Subpoena and Plaintiff was forced to file her First Motion to Compel, for Contempt, and for Sanctions against Brittany Young for Failure to Comply with Subpoena. [Adv. Doc. # 38].

### D. The Court Orders Brittany Young to Comply With the Subpoena and Brittany Young Fails to Do So

10. On December 12, 2017, this Court entered an Order Regarding Motion to Compel, Civil Contempt, and Sanctions (Brittany Young) (hereinafter the "Second Order") in which the Court granted Plaintiff's first Motion to Compel and ordered Brittany Young to produce for inspection and copying all documents that Plaintiff had

---

[3]A true and correct copy of the Subpoena and Amended Notice of Third-Party Request for Production is attached hereto as Exhibit P-3 and incorporated herein by reference.

requested in her Subpoena and in the prior Order no later than December 27, 2017.[4]

[Adv. Doc. # 47]. The Court further ordered, *inter alia*, that:

> If by December 27, 2017, Ms. Brittany Young fails to produce the documents required by this Order, or if by December 29, 2017, Ms. Brittany Young fails to provide the sworn Response to the Subpoena required by this Order, then Ms. Brittany Young will be in civil contempt of Court. In such event, Plaintiff will also be entitled to seek additional and further relief and sanctions from the Court against Ms. Brittany Young.

[Adv. Doc. # 47].

11. On or about December 27, 2017, Carlos Miranda delivered the documents produced by Brittany Young pursuant to the Second Order to the undersigned counsel. Brittany Young failed to produce all of the documents requested. An inventory of the documents produced and those not produced by Brittany Young on December 27, 2017 is attached hereto as Exhibit P-5 and is incorporated herein by reference.

12. Thereafter, Brittany Young served her Sworn Responses to Plaintiff's Third Party Requests for Production on counsel for Plaintiff.[5] Despite Debtor's testimony at his 2004 Exam that he and his wife Brittany Young had executed a written marital agreement two years ago in which they agreed that their bank accounts and income would be separate and despite refusing to produce any documents regarding Brittany

---

[4]For the Court's convenience, a true and correct copy of the December 12, 2017 Order Regarding Motion to Compel, Civil Contempt, and Sanctions (Brittany Young) is attached hereto as Exhibit P-4 and is incorporated herein by reference.

[5]A true and correct copy of Brittany Young's Sworn Responses to Plaintiff's Third Party Requests for Production is attached hereto as Exhibit P-6 and incorporated herein by reference.

Young's bank accounts and income, Brittany Young's sworn responses show that no such written marital agreement exists. See Exhibit P-6, Response to Request for Production No. 52.

13. As a result of Brittany Young's failure and refusal to produce the requested documents, Plaintiff is forced to file this Second Motion to Compel and for Sanctions Against Brittany Young.

## II. ARGUMENT & AUTHORITIES

14. Pursuant to the Order:

> If by December 27, 2017, Ms. Brittany Young fails to produce the documents required by this Order, or if by December 29, 2017, Ms. Brittany Young fails to provide the sworn Response to the Subpoena required by this Order, then Ms. Brittany Young will be in civil contempt of Court. In such event, Plaintiff will also be entitled to seek additional and further relief and sanctions from the Court against Ms. Brittany Young.

[Adv. Doc. # 47]. As set forth above, Brittany Young failed to produce the documents required by the Second Order. Brittany Young did not produce any documents in response to the majority of Plaintiff's Requests for Production. Brittany Young did not produce her 2013 or 2014 federal tax returns. The 2016 federal tax return produced by Brittany Young was not signed. Moreover, in response to Plaintiff's request for the alleged marital property agreement with Debtor and related documents, Brittany Young stated that the were no such documents.

15. Pursuant to the Court's Second Order, Brittany Young is in contempt of this Court.

Pursuant to the Court's Second Order, Plaintiff now seeks additional sanctions against Brittany Young for her willful failure to produce the documents requested. A court may impose sanctions under its inherent power on a person for conduct in bad faith, for willful disobedience of a court order, or for fraud on the Court. *See Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186, 197 L. Ed. 2d 585 (2017); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *Projects Mgmt. Co. v. DynCorp Int'l LLC*, 734 F.3d 366, 373 (4th Cir. 2013); *Sahyers v. Prugh, Holliday & Karatinos, P.L.*, 560 F.3d 1241, 1245-46 & n.9 (11th Cir. 2009). Generally, "the proper remedy for contempt is the assessment of the damages caused by a [defendant's] actions, including attorney's fees." *In re All Trac Transp., Inc.*, 310 B.R. 570, 573 (Bankr. N.D. Tex. 2004)(citations omitted). "Attorney's fees may be awarded where court orders must be enforced by civil proceedings." *Id.* (*citing In re Hulon*, 92 B.R. 670, 676 (Bankr.N.D.Tex.1988).

16. Brittany Young has refused to comply with the Subpoena, the First Order and the Second Order and is in contempt of this Court. Brittany Young is therefore properly subject to sanctions. Plaintiff requests that this Court issue an Order against Brittany Young directing her to produce the documents requested within fourteen (14) days of the date of the order and sanctioning her in the amount of $2,050.00 for attorney's fees incurred by Plaintiff in preparing and filing this motion, and in attending a hearing on same.

17. Additionally, this Court should be cognizant that this Motion for Sanctions is one of four that are to be filed in this bankruptcy and the related adversary proceedings against the Debtor, his father, Keith Young, and wife, Brittany Young. The Debtor, Brittany Young, and Keith Young, have all failed and refused to meaningfully participate in discovery in this bankruptcy matter and in the related adversary proceedings. Pamela Young has been forced to file three Motions to Compel and for Sanctions against Debtor in the main bankruptcy case for Debtor's failure to produce documents under Rule 2004. Pamela Young has been forced to file two Motions to Compel and for Sanctions against the Debtor in Adversary Proceeding No. 17-03010 for his failure to produce documents and respond to discovery. Pamela Young has been forced to file two Motions to Compel and for Sanctions against Brittany Young and two Motions to Compel and for Sanctions against Keith Young in Adversary Proceeding No. 17-03010 for their failure to respond to subpoenas duces tecum.

18. Bankruptcy relief is a privilege and the Debtor has "an affirmative duty . . . to provide books and records 'accurately documenting his financial affairs.'" *In re Hughes*, 354 B.R. 801, 809 (Bankr. N.D. Tex. 2006), *aff'd sub nom. Hughes v. Neary*, 386 B.R. 624 (N.D. Tex. 2008), *aff'd sub nom. In re Hughes*, 309 Fed. Appx. 841 (5th Cir. 2009). Despite this duty, the Debtor and his family are engaging in a conspiracy to hide documents related to Debtor's financial affairs. Debtor and his family are making a mockery of the bankruptcy process and this Court and should be sanctioned

appropriately.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Pamela Young requests that this Court enter an order:

a.  directing Brittany Young to comply with the Order within 14 days;

b.  directing Brittany Young to pay the sum of $2,050.00 for reasonable attorney's fees and expenses incurred in bringing this Motion and attending hearing on same; and,

c.  awarding Plaintiff such other relief as is just and equitable under the circumstances.

A copy of the proposed Order Granting Plaintiff's Second Motion to Compel and for Sanctions Against Brittany Young is attached hereto as Exhibit P-7.

Respectfully submitted,

JAMES & HAUGLAND, P.C.
P.O. Box 1770
El Paso, Texas 79949-1770
Phone: 915-532-3911
FAX: (915) 541-6440

By: _____
Corey W. Haugland
State Bar No. 09234200
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, Corey W. Haugland, hereby certify that on the _21st_ day of January, 2018 a true and correct copy of the foregoing Plaintiff's Second Motion to Compel and for Sanctions Against Brittany Young was served on the following parties *via* electronic means as listed on the Court's ECF Noticing System:

Carlos A. Miranda, III
Miranda & Maldonado, P.C.
5915 Silver Springs
Bldg. 7
El Paso, TX 79912

and was served on the following via certified mail, return receipt requested:

Brittany Young
6647 Mariposa Drive
El Paso, Texas 79912

_____
Corey W. Haugland

Page 1

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

In re:                          )
                                )
TRAVIS RYAN YOUNG,              ) Case No. 17-30163-hcm
                                )
      Debtor.                   )


*********************************************

ORAL DEPOSITION OF

TRAVIS RYAN YOUNG

APRIL 4, 2017

*********************************************

        The ORAL DEPOSITION of TRAVIS RYAN YOUNG,

produced as a witness at the instance of Pamela Young,

and duly sworn, was taken in the above-styled and

numbered cause on Tuesday, April 4, 2017, from 10:26

a.m. to 1:06 p.m., before Mary Procell, CSR in and for

the State of Texas, reported by machine shorthand, at

the offices of Associated Court Reporters, 221 North

Kansas, Suite 550, El Paso, Texas, pursuant to the

Federal Rules of Civil Procedure.


CERTIFIED: _____  PREPARED FOR: _____

**EXHIBIT**

*P-1*

## Page 2

APPEARANCES

FOR THE DEBTOR:
Mr. Michael R. Nevarez
The Law Offices of Michael R. Nevarez
P.O. Box 12247
El Paso, Texas 79913

FOR PAMELA YOUNG:
Mr. Corey W. Haugland
James & Haugland, P.C.
609 Montana Avenue
El Paso, Texas 79902

Also Present:
Pamela Young

INDEX

WITNESS:                                        Page
TRAVIS RYAN YOUNG
EXAMINATION BY MR. HAUGLAND                       4

EXHIBITS
1   Notice of Intent to Conduct Rule 2004          5
    Examination Duces Tecum of Debtor,
    Travis Ryan Young
2   Premier Builders Inventory List               42
3   Voluntary Petition for Individuals            55
    Filing for Bankruptcy of Travis Ryan
    Young, 51 pages
4   Statement of Financial Affairs for            55
    Individuals Filing for Bankruptcy for
    Travis Ryan Young
5   Amended Statement of Financial Affairs        56
    for Individuals Filing for Bankruptcy
    for Travis Ryan Young
6   Copy of check to FirstLight from              64
    Travis R. Young, dated 12/21/15
7   Copy of check to FirstLight from              64
    Travis R. Young, dated 1/15/16
8   Copy of check to Accurate Collision           64
    from Travis R. Young, dated 2/4/16

## Page 3

CERTIFICATION                                    66
CHANGES AND SIGNATURE PAGE                        67

## Page 4

TRAVIS RYAN YOUNG,
having been first duly sworn, testified as follows:
EXAMINATION
BY MR. HAUGLAND:
    Q.  Please state your complete name for the record.
    A.  Travis Ryan Young.
    Q.  And where do you reside?
    A.  El Paso, Texas.
    Q.  What address?
    A.  6647 Mariposa, El Paso, Texas 79912.
    Q.  And how long have you lived at that address?
    A.  About five years now.
    Q.  What is your date of birth?
    A.  11/18/82.
    Q.  What is your Texas driver's license number?
    A.  I don't know it offhand.  17632530.
    Q.  Did I ask your date of birth?
    A.  Yes.
    Q.  Where were you born?
    A.  El Paso, Texas.
    Q.  And where were you raised?
    A.  El Paso, Texas.
    Q.  Where did you go to high school?
    A.  Cathedral High School.

## Page 5

    Q.  What year did you graduate?
    A.  2001.
    Q.  Have you ever provided a deposition before?
    A.  No.
    Q.  You are doing well.  You're answering my questions audibly, which helps the court reporter make a record.  If you don't understand any of my questions, ask me to rephrase, and I'll be glad to do so.  If you need to take a break for any reason, ask to take a break and you can do so.
        We met yesterday in order for you to produce documents pursuant to a Notice of Intent to Conduct Rule 2004 Examination Duces Tecum, correct?
    A.  Yes.
        (Exhibit marked, 1.)
    Q.  (BY MR. HAUGLAND)  I'm going to hand both you and your attorney a copy of that notice, which we should mark as Exhibit 1.
        I want to confirm those things that were produced by you yesterday, and I'll show it to you as we talk about them.  The first file you produced was Bank of America check statements, correct?
    A.  Right.
    Q.  Is that for 2014 through 2016?
    A.  Yes.

## Page 6

1  Q. Was this a personal account or is this a
2  business account?
3  A. Those are personal accounts.
4  Q. During this time frame did you maintain a
5  separate checking account for the business?
6  A. In 2014 I had a separate account, the 8381,
7  which was a business one, but still under the sole
8  proprietorship.
9  Q. Do you have a college degree?
10  A. Yes.
11  Q. What degree do you have?
12  A. It's in civil engineering.
13  Q. Where did you obtain it?
14  A. New Mexico State University.
15  Q. When did you graduate?
16  A. 2006.
17  Q. After graduating who did you go to work for?
18  A. I worked for Dantex Construction.
19  Q. In what capacity?
20  A. I started as a manager there.
21  Q. Who was your immediate supervisor?
22  A. I think his name was Tom -- I don't remember
23  his last name. Tom -- I would have to think about that.
24  Q. How long did you work for Dantex?
25  A. About two years.

## Page 7

1  Q. And where did you go to work after that?
2  A. That's when I started the home building after
3  that.
4  Q. Did you build homes for Dantex?
5  A. No. Dantex was commercial.
6  Q. So you started home building in 2008; is that
7  right?
8  A. It was late 2008, early 2009, I believe.
9  Q. Did you do that in your individual name or did
10  you use a d/b/a?
11  A. It was Travis Ryan Young d/b/a Premier
12  Builders.
13  Q. Did you file an assumed name certificate with
14  the county clerk?
15  A. Uh-huh. Yes, I did.
16  Q. For whom did you build your first home?
17  A. It was -- well, it was a spec house, but then
18  the people that bought it were the Chaffees. Their last
19  name was Chaffee.
20  Q. What did the house sell for?
21  A. Around $300,000, I believe.
22  Q. Where did you get the financing to build a
23  spec house?
24  A. It was from my dad.
25  Q. What's your father's name?

## Page 8

1  A. Keith Young.
2  Q. Did you make a profit from that house?
3  A. I did.
4  Q. Approximately how much?
5  A. I would say like 40-, 45,000.
6  Q. When did you complete construction of that
7  house?
8  A. It was probably 2010. No -- yes, 2010.
9  Q. Did you start any new construction before you
10  finished that house, or did you wait until you finished
11  that house before starting something else?
12  A. Yes, I waited till that one was finished and
13  sold.
14  Q. With regard to the construction of the house,
15  what is it exactly that you do in building the houses
16  that you build?
17  A. I mean, I would do everything back then, do
18  the budget for it, run the -- get the subcontractors,
19  supervise, manage it.
20  Q. Where did you get your plans for building the
21  house?
22  A. From a drafter. And we designed it.
23  Q. Did you design the houses, or did someone else
24  design the houses?
25  A. I mean, they would be kind of my idea, but

## Page 9

1  they would -- of course, they are drafters, so they
2  would draw them on the AutoCAD.
3  Q. Who did you use to draw the plans for the
4  first house?
5  A. Who did that one? He was somebody that I
6  worked with at Dantex. I would have to look up his
7  name. I don't remember his name.
8  Q. What kind of subs did you have to hire to
9  build the house?
10  A. Each sub was specialized in their area:
11  Separate roof subcontractor, plumbing contractor,
12  et cetera.
13  Q. I guess what I'm trying to find out is, do you
14  build any part of the house yourself, with your own
15  hands?
16  A. I would do some work back then on my own,
17  finish work, tile work, but after that house I didn't.
18  Q. So how many subs would you have on the
19  construction of this house? You said roofing, plumbing.
20  A. Probably would be about 12 to 15.
21  Q. After completing this house in 2010, did you
22  start the construction of another house?
23  A. Yes, I did.
24  Q. For whom?
25  A. It was another spec house.

## Page 10

1     Q. Did you sell this house?

2     A. Uh-huh.

3     Q. To whom?

4     A. That one was to -- it was a realtor. Her name

5 was Linda.

6     Q. Can you remember her last name?

7     A. McDaniel.

8     Q. What was this house sold for?

9     A. I think 320-, I want to say.

10     Q. Did you make a profit on the sale?

11     A. That one -- as far as you mean profit after

12 tax, doing all the -- deducting costs?

13     Q. After all the costs.

14     A. That one, probably like 20,000.

15     Q. Just out of curiosity, what kind of profit

16 margin were you looking for out of the construction of

17 these homes?

18     A. I mean, that was during the bad economy time,

19 so I wasn't looking for a huge profit, but more than

20 that. But that house sat for about -- I don't know --

21 eight months while it was for sale.

22     Q. When did you complete the construction of the

23 property?

24     A. That one, I want to say 2011.

25     Q. Who provided the financing to build the house?

## Page 11

1     A. My father did.

2     Q. When did you start building the next house

3 that you built?

4     A. Everything -- every one was subsequent. So

5 after 2011 would be the following.

6     Q. Would you have built it before you sold the

7 house to Linda McDaniel, or would you have built it

8 after you completed the construction?

9     A. It was after.

10     Q. After it was sold?

11     A. Uh-huh, after it was sold.

12     Q. So did you start that house in 2012 or 2011?

13     A. It's hard to say. I'm not sure. Could have

14 been late 2011, early 2012.

15     Q. Whose home was this? Or was this another spec

16 house?

17     A. Yes. I was just building specs all then --

18 all at that time. I don't remember whose that one was.

19     Q. You don't recall who you sold it to?

20     A. Huh-uh.

21     Q. When did you finish construction?

22     MR. NEVAREZ: When you answer, say yes or

23 no.

24     THE WITNESS: Oh, sorry.

25     MR. NEVAREZ: Don't do huh-uh. That

## Page 12

1 doesn't show up.

2     A. Okay. Repeat, please.

3     Q. (BY MR. HAUGLAND) You can't remember who you

4 sold the house to?

5     A. No, I don't remember those folks.

6     Q. When was the next house that you built?

7     A. It was probably 2012 as well.

8     Q. Was this another spec house?

9     A. That one was a presale.

10     Q. To whom?

11     A. I remember their last name was Hollands.

12     Q. Can you remember where the house was located?

13     A. It was on Brays Landing.

14     Q. And how much did that house sell for?

15     A. It was about 320- as well.

16     Q. I didn't ask about the third house. Who

17 provided the financing to build the third house?

18     A. My father did.

19     Q. Who provided the financing to build this

20 fourth house for the Hollands?

21     A. My father.

22     Q. When did you get the Hollands' home finished?

23     A. 2012.

24     Q. Whose house did you build next?

25     A. I built a spec house after that again. Which

## Page 13

1 one was it? I think that was Franklin Trail.

2     Q. Was the house sold?

3     A. Uh-huh.

4     Q. To who?

5     A. It was sold to a doctor. I think his last

6 name was Kidd.

7     Q. Can you remember the sales price?

8     A. That one was 415-.

9     Q. Did you make a profit on it?

10     A. I made probably -- after all the costs and

11 everything, it was probably like 35,000.

12     Q. Who provided the financing for building that

13 house?

14     A. My father.

15     Q. When was that house completed?

16     A. 2013.

17     Q. What was the next house that you built?

18     A. I built one for -- the next one was Calle

19 Alta.

20     Q. How do you spell that?

21     A. C-A-L-L-E, and another separate word, A-L-T-A.

22     Q. And for whom did you build this home?

23     A. That was for the Rioses.

24     Q. What did it sell for?

25     A. That was their own land, and they financed

## Page 14

1  that one. So there really wasn't a sales price. Well,
2  I think I charged them like 380,000, because they
3  already had the land.
4      Q.  Did you make a profit on it?
5      A.  Probably about 35,000 or so.
6      Q.  And who financed -- they financed this one?
7      A.  Uh-huh.
8      Q.  When was this house completed?
9      A.  2013.
10     Q.  Were you getting faster at building homes, or
11  were you starting to build them simultaneously?
12     A.  I mean, my dad was limited to what he was
13  giving out, so that's why -- I was building Franklin
14  Trail and then Calle Alta at the same time, because
15  they -- I mean the owners were financing it. That's
16  usually how presales go. The owners are supposed to
17  finance them.
18     Q.  What was the next house you built after the
19  Calle Alta?
20     A.  That was hers (indicating).
21     Q.  Pam Young's?
22     A.  Your client's, yes.
23     Q.  And who financed the construction of that
24  house?
25     A.  My father did.

## Page 15

1      Q.  And what was the sales price of that house?
2      A.  536-.
3      Q.  Did you make a profit on that house?
4      A.  Not really.
5      Q.  Was this the first home you constructed that
6  you didn't make a profit?
7      A.  That probably was, yes. That's when it
8  started.
9      Q.  Who designed the plans for the house?
10     A.  That house was -- his name was Rafcad.
11     Q.  How do you spell that?
12     A.  R-A-F-C-A-D.
13     Q.  Does that person live in El Paso?
14     A.  Yes, he does.
15     Q.  Is he an architect?
16     A.  He is a drafter.
17     Q.  Is he independent or does he work for someone?
18     A.  No. He is independent.
19     Q.  What was the next house that you built?
20     A.  At that time I was doing Silver Star and
21  Montoya Oak at the same time.
22     Q.  Have those been completed?
23     A.  Uh-huh. Yes, they have.
24     Q.  First of all, when was Pam Young's house
25  completed?

## Page 16

1      A.  It was in 2014.
2      Q.  When was Silver Star completed?
3      A.  It was completed in 2- -- at the end of 2015,
4  and it was sold in 2016. Silver Star was a spec house.
5      Q.  What did Silver Star sell for?
6      A.  675-.
7      Q.  Did you make a profit?
8      A.  No.
9      Q.  Montoya Oak, when did you complete it?
10     A.  That was completed in 2015.
11     Q.  When was it sold?
12     A.  It was 2015 as well. The owners had owned the
13  lot, and my father had financed for them, so it was kind
14  of a presale/spec built -- well, it was an awkward
15  situation.
16     Q.  Who were the buyers?
17     A.  The people who owned that lot were -- it was
18  Rebecca Wisbrun. She is also known by six names. I'm
19  not sure all of them. She is R.W. Schwartz.
20     Q.  Rebecca Reza?
21     A.  Yes. She is known by Rebecca Reza, Rebecca
22  Wisbrun, R.W. Schwartz. I don't know her other ones.
23     Q.  Do you know why she has so many names?
24     A.  I don't think they are the most ethical of
25  people.

## Page 17

1      Q.  What did that house sell for?
2      A.  That one, the contract was for 408,000. That
3  was with the pool.
4      Q.  Did you realize a profit on this property?
5      A.  No, I don't.
6      Q.  Did you make a profit on -- you didn't make a
7  profit on Silver Star either?
8      A.  Huh-uh.
9      Q.  Who financed Silver Star?
10     A.  Well, that was a mix of my father and those
11  Jet loans. And I had those properties so long that the
12  Jet loans got very expensive.
13     Q.  And who financed Montoya Oak?
14     A.  My father did that one.
15     Q.  After Montoya Oak, what was the next property
16  you built?
17     A.  Well, Silver Star was really after Montoya
18  Oak, and Silver Star was my last one.
19     Q.  So you haven't been employed since the end of
20  2015?
21     A.  Well, I sold it the beginning of 2016, that
22  Silver Star house. And, yes, that's -- that was the end
23  of the d/b/a.
24     Q.  Did you go to work for somebody else at that
25  point in time?

## Page 18

1   A. No. Well --

2   Q. 2016.

3   A. I didn't know what I was going to do for a few

4   months, and that's when my wife opened her company.

5   Q. What's your wife's name?

6   A. Brittany Young.

7   Q. What's her maiden name?

8   A. Jackson.

9   Q. And when did you get married?

10  A. It was in 2014.

11  Q. Do you know the date?

12  A. August.

13  Q. August what?

14  A. The end of August, I believe. August 23 or

15  24.

16  Q. Of 2014?

17  A. Uh-huh.

18  Q. Is your wife from El Paso?

19  A. She is from Las Cruces.

20  Q. Does she have a degree?

21  A. Yes, she does.

22  Q. What is her educational background?

23  A. It's in -- she got her first degree in

24  communications, and then she got a secondary degree in

25  education.

## Page 19

1   Q. At New Mexico State?

2   A. Yes.

3   Q. Is that where you met her?

4   A. I met her down here, actually.

5   Q. Do you have any children?

6   A. We just had one child.

7   Q. How old is the baby?

8   A. She is seven months now.

9   Q. Is your wife employed?

10  A. No.

11  Q. Has she ever been employed while you have been

12  married to her?

13  A. Through EPISD.

14  Q. When did she work for the school district?

15  A. She worked 2015 and part of 2016.

16  Q. Has she not worked since she had the baby?

17  A. Yes.

18  Q. You sound better today.

19  A. A little bit.

20  Q. Are you still getting over --

21  A. I had my cold and then I got better, and then

22  I got it again.

23  Q. You sound a little better today than you did

24  yesterday.

25      Now let's talk about the document

## Page 20

1   production, because we are kind of at that point. The

2   first category of documents that we requested were those

3   "documents relating to savings bank books, records,

4   accounts and memoranda, current as well as those that

5   may have been canceled, whether in your name or your

6   spouse's name, individually or jointly, or in connection

7   with any other person or persons." We asked for these

8   records for January 1, 2013 through January 31, 2017.

9       And the first file of documents that you

10  provided were from December 25, 2013 through January 26,

11  2015, your Bank of America account in your name of

12  Travis R. Young; is that correct?

13  A. Yes.

14  Q. The address for the bank statements is 4532

15  Rhea, R-H-E-A, Lane, El Paso, Texas 79924-1746. For

16  what period of time did you live at that address?

17  A. That account was like about nine years old,

18  and so it was just always my parents' address. I never

19  changed it.

20  Q. So that's your parents' address?

21  A. Uh-huh. Yes.

22  Q. And did you ever use the bank account as a

23  business account for your d/b/a Premier Builders?

24  A. It was.

25  Q. For what period of time?

## Page 21

1   A. The time before I opened the other -- 8381.

2   Q. That's likewise a Bank of America account,

3   correct?

4   A. Yes.

5   Q. And it appears that this account, the

6   documents produced are for March 1, 2014 --

7   A. Yes. That's when it was opened.

8   Q. -- through December 31, 2014. Does that sound

9   about right?

10  A. No. It should be up to the 2017. Oh, yes.

11  That was one of the --

12  Q. Let me hand you the file.

13  A. Okay. This one is 2014. The other ones are

14  2015 and 2016.

15  Q. Okay.

16  Q. So this was just 2014.

17  Q. This is just 2014?

18  A. Uh-huh.

19  Q. Is this just 2015 in this file?

20  A. Uh-huh. Yes.

21  Q. And then --

22  A. Yes, 2016.

23  Q. This Bank of America statement that you have

24  listed as Travis R. Young, Sole Prop -- or sole

25  proprietor, d/b/a Premier Builders, was this just a

## Page 22

1  business account?
2      A. No. I mean, since I was sole proprietor, I
3  used it for both purposes.
4      Q. And this one came to 6647 Mariposa Drive?
5      A. Right.
6      Q. And that's your -- is that your homestead?
7      A. Yes.
8      Q. And you have lived there since when?
9      A. Early 2011.
10      Q. The account appears to have been closed in
11  June of 2016; is that right?
12      A. Which account? The 8381?
13      Q. The 8381 account at Bank of America.
14      A. No. It's still open, I mean to this day.
15  It's just not being utilized.
16      Q. Do you not have any bank statements after June
17  of 2016?
18      A. I did. I figured they were to 2017 in there.
19      Q. That's when they end, is in June of 2016.
20      A. I had these printed at Office Depot, and maybe
21  they didn't get the rest.
22      Q. If you would check on that, I would appreciate
23  it.
24      A. I will.
25      Q. So you have not closed the account?

## Page 23

1      A. No.
2      Q. Have you turned those bank statements over to
3  the Chapter 7 trustee, Mr. Ingalls?
4      A. Yes, up till the date I filed, and the
5  previous six months from then. And I'm pretty sure
6  Cheryl put them in with the filing.
7      Q. Since opening the sole proprietorship account
8  in 2014, have you maintained any other bank accounts?
9      A. I still kept the personal one, but I didn't
10  use it all that much.
11      Q. Is that the first one we saw --
12      A. Yes.
13      Q. -- the --
14          And is it still open also?
15      A. No. Those ones are closed.
16      Q. The personal account is closed?
17      A. Yes.
18      Q. When did you close them?
19      A. They closed them because there was no
20  activity. So it was probably -- I think the last
21  statement is close to when it was closed, the last month
22  in there.
23      Q. The one that you produced?
24      A. Uh-huh.
25      Q. Has your wife maintained a separate bank

## Page 24

1  account during the time that you have been married?
2      A. Yes, she has.
3      Q. Have you produced the statements for that
4  account?
5      A. For the bankruptcy.
6      Q. For the 2004 examination.
7      A. Oh, no.
8      Q. Why not?
9      A. Because those are her separate accounts that
10  she has had.
11      Q. Have you and your wife ever entered into a
12  premarital agreement to keep your assets separate during
13  your marriage?
14      A. We have had a marital agreement that her
15  accounts would be the same and --
16      Q. Is there a written agreement?
17      A. Yes.
18      Q. There's a written premarital agreement?
19      A. Not premarital, just a marital agreement.
20      Q. And it's in writing?
21      A. Uh-huh. Yes.
22      Q. Who prepared it?
23      A. Her and I did.
24      Q. When was it prepared?
25      A. I would say about two years ago.

## Page 25

1      Q. What are the key terms of that written marital
2  agreement with Brittany?
3      A. Just that her bank statement -- her bank
4  accounts stay hers, her income that she would make would
5  stay hers, and mine would stay mine.
6      Q. Do you have a mortgage on your homestead?
7      A. There is a mortgage.
8      Q. Who is it with?
9      A. It's with Kathleen Hernandez. That's a
10  wraparound deed, so the main mortgage holder is still a
11  bank called Colonial Savings.
12      Q. Who makes the mortgage payments every month?
13      A. I pay directly to Colonial Savings.
14      Q. The written marital agreement with your wife,
15  does it have any other terms besides keeping the bank
16  accounts separate and having the income stay separate?
17      A. I mean those are the main terms of it.
18      Q. Have you attempted, at the end of any year, to
19  divide your property with your wife, as to who and what
20  belongs to whom?
21      A. No, never.
22      Q. Have you ever had a bank account in the name
23  of Bay Homes?
24      A. No. Bay Homes was never a sole
25  proprietorship.

Page 26

1  Q. What was Bay Homes?
2  A. Bay Homes is a d/b/a of my wife's LLC.
3  Q. What LLCs does your wife own?
4  A. Premier Builders & Design, LLC and RUF
5  Developers, LLC.
6  Q. And Bay Homes is a d/b/a for which?
7  A. Premier Builders & Design, LLC.
8  Q. Since 2016 have you worked for your wife's
9  LLCs in building homes?
10  A. Yes.
11  Q. When did you go to work for Premier Builders &
12  Design, LLC?
13  A. It was about April -- no -- March of 2016.
14  Q. How many homes has Premier Builders & Design,
15  LLC built since you went to work for it in March 2016?
16  A. From ground up, they are still just doing one.
17  Q. And when did you go to work for RUF Builders,
18  LLC?
19  A. RUF is just -- they just own a lot. It hasn't
20  been organized, really. I mean, it hasn't been -- it
21  hasn't had any assets, really, beside just owning a lot.
22  Q. The Premier Builders house that's being built,
23  is that a presale or is that a spec house?
24  A. It's a spec.
25  Q. Where is it located?

Page 27

1  A. It's on 354 Rocky Point.
2  Q. Who is providing the financing for it?
3  A. My father is.
4  Q. What's your projected sales price for this
5  house?
6  A. It's hard to say. It's a difficult area.
7  Right now it's listed at 898-, but it could go for 800-.
8  Q. Do you know what costs you have in that
9  property?
10  A. No, I don't.
11  Q. What has been your job title and
12  responsibilities for Premier Builders & Design, LLC with
13  regard to the construction of the Rocky Point house?
14  A. Just managing the build aspects of it.
15  Q. What has your wife done for Premier Builders &
16  Design, LLC with regard to the construction of 354 Rocky
17  Point?
18  A. She retains the contracts for the
19  subcontractors. She does the accounting. She does -- I
20  mean, she does the business side of it, makes the phone
21  calls to the City, makes phone calls.
22  Q. What's your salary with Premier Builders &
23  Design?
24  A. We haven't come to an agreement yet, since it
25  hasn't had any income from the build.

Page 28

1  Q. Do you have a salary with RUF Builders, LLC?
2  A. No.
3  Q. Do you have an agreement concerning a salary
4  that you will get in RUF Builders, LLC?
5  A. No.
6  Q. Does your wife get a salary in Premier
7  Builders & Design, LLC?
8  A. No, she doesn't.
9  Q. With regard to your d/b/a Premier Builders,
10  did you have a salary with Premier Builders?
11  A. No, I never did. Since most of the houses
12  were spec homes, I had to wait until they were sold.
13  Q. Did your wife have a salary with the d/b/a
14  Premier Builders?
15  A. No, she didn't.
16  Q. Did your wife ever perform services for
17  Premier Builders?
18  A. No.
19  Q. When your father was financing the properties
20  for Premier Builders, what terms was he giving you for
21  the financing?
22  A. I mean before I ran into all the problems with
23  her (indicating) -- I mean, he was helping me get
24  started with the business, so he would take just like
25  10,000. But he didn't even take an interest in --

Page 29

1  interest on hers.
2  Q. So he wouldn't provide conventional financing
3  where he charged interest on the money loaned. He was
4  just taking a set fee of $10,000 per loan?
5  A. Once I finished he would say, Okay. What did
6  you make on it? And then -- but the whole time he was
7  mainly doing it, helping me get started with the
8  business.
9  Q. So would it be fair to say that you would come
10  to an agreement on what you would pay him back after you
11  got the house built and sold?
12  A. For the most part, yes.
13  Q. When the financing was being provided, were
14  you documenting the loan in any way?
15  A. I would put -- before hers I would just put it
16  on my spreadsheet, what I would put into it, into each
17  build. Then once it sold we would go over it. So we
18  never filed deeds or anything.
19  Q. Well, you wouldn't file a deed of trust?
20  A. Right.
21  Q. Would you ever sign a note?
22  A. No.
23  Q. So the last property that you did under your
24  d/b/a was Silver Star, correct?
25  A. Yes.

## Page 30

1    Q. And that was financed by your father?

2    A. Correct.

3    Q. And was your father paid in full for --

4    A. Yes.

5    Q. -- his loan on that property?

6    A. Yes, it was, because that's when I split the

7 Jet loan to part of it, and then he financed part of it.

8    Q. Was the Jet loan paid in full?

9    A. Yes.

10    Q. And I think you indicated that the next

11 property you built was the one for your wife's company,

12 Premier Builders, LLC?

13    A. Right.

14    Q. And your father is providing the financing on

15 that property?

16    A. Yes, he is. It also has another lien from the

17 developer.

18    Q. Who is the developer?

19    A. High Mountain. High Mountain, Limited.

20    Q. Who is the person behind High Mountain,

21 Limited?

22    A. It's Richard Thomas.

23    Q. How much is his lien?

24    A. It's 100,000, I believe.

25    Q. Have you personally guaranteed that lien?

## Page 31

1    A. No. I mean, I don't know if my wife has. I

2 don't believe she did.

3    Q. So there's no personal guarantees on the loan

4 by Richard Thomas to Premier Builders & Design, LLC?

5    A. No.

6    Q. Is there a promissory note?

7    A. Yes, there is.

8    Q. Is there a deed of trust?

9    A. Yes.

10    Q. Is the loan for the purchase of the lot?

11    A. Yes.

12    Q. The financing that's been provided by your

13 father, is there a promissory note?

14    A. Yes, there is.

15    Q. Is there a deed of trust?

16    A. Yes.

17    Q. Is there an interest rate called for in the

18 promissory note with your father?

19    A. I would have to verify if it did. One of my

20 old attorneys did that paperwork.

21    Q. Who was that, the attorney?

22    A. It was Kirk.

23    Q. Bud Kirk?

24    A. Uh-huh.

25    Q. Have you done any other work since the first

## Page 32

1 part of 2016, other than build the house with Premier

2 Builders & Design, LLC?

3    A. We did a little renovation in Las Cruces for

4 her friend -- her friend's dad who passed away.

5    Q. Did the friend pass away or the friend's --

6    A. The friend's father.

7    Q. What's the friend's name?

8    A. It was Darby Snow.

9    Q. Was there a contract for this work?

10    A. Well, the father died and they were trying

11 to -- they couldn't find anybody to sell the house

12 because it was like a hoarder house, and so they asked

13 us -- they asked my wife if she wanted to buy it.

14    Q. They --

15    A. They were almost going to condemn it, the

16 City, and the wife couldn't afford to have two house

17 payments.

18    Q. The wife -- whose wife?

19    A. The wife of the guy who passed away.

20    Q. She had two house payments?

21    A. Well, his -- because they were living

22 separate. And so when he passed away she couldn't keep

23 that house afloat and her own personal residence.

24    Q. So was the house deeded to your wife?

25    A. It was deeded to the LLC.

## Page 33

1    Q. Which LLC?

2    A. Premier Builders & Design, LLC.

3    Q. So what work had been done on this house since

4 it was deeded to Premier Builders & Design?

5    A. It was remodeled and sold.

6    Q. What repairs were done to this house?

7    A. It was extensive. The whole back part of the

8 house had to come off. Roof redone, electrical,

9 plumbing, kitchen, all new tile, carpet, garage doors,

10 new doors. It was a lot of work.

11    Q. And when did you do this work?

12    A. In March or April of -- no -- April of 2014 --

13 2016. April and May, I believe.

14    Q. And when was it sold?

15    A. In June.

16    Q. Of 2016?

17    A. Yes.

18    Q. How much was it sold for?

19    A. 130-, I want to say.

20    Q. What was the property acquired for? What was

21 your purchase price?

22    A. 89-, I believe.

23    Q. How much money was put into the house to fix

24 it up?

25    A. I don't know offhand. I would have to see.

## Page 34

1  Like I said, we haven't done the taxes this year so --
2  or she hasn't done the taxes.
3      Q.  Did you make money on the property?
4      A.  No, because we were just helping a friend. I
5  mean after all the costs, just driving up there --
6      Q.  So was this job done before you started
7  building the house at 354 Rocky Point?
8      A.  Yes.
9      Q.  Who funded the remodeling job in Las Cruces?
10     A.  My father did.
11     Q.  What interest or profit did your father take
12  on this job?
13     A.  There wasn't much to be taken, so I think he
14  only took like 1,000.  First we bought it just to
15  wholesale it, but nobody wanted it because it was in too
16  bad a condition.
17         MR. NEVAREZ:  Is this a good time to
18  break?
19         MR. HAUGLAND:  Sure, we can take a break.
20         (A break taken, 11:26 to 11:38.)
21     Q.  (BY MR. HAUGLAND)  Let's talk about some of the
22  production of documents in this matter.  We asked you to
23  provide a ledger for Premier Builders, the d/b/a.
24     A.  Uh-huh.
25     Q.  Let me hand you a file.  Is that what those

## Page 35

1  documents are there?  Is that the ledger that you
2  prepared for Premier Builders?
3      A.  Yes.
4      Q.  And I numbered the documents you produced
5  yesterday in my office, so that ledger starts at Travis
6  00435 and goes through Travis 00453; is that right?
7      A.  Yes.
8      Q.  How would you know what entries to put in the
9  ledger as compared to the checks that were written on
10  the account during that time frame?
11     A.  When I would write a check I would put it on
12  there, if that's what you are asking.
13     Q.  Would you have every check in the account on
14  your ledger?
15     A.  Well, they should be, yes.  Yes.
16     Q.  Would there ever be checks written out of the
17  account that would not end up on the ledger?
18     A.  No.
19     Q.  The checks that were produced in response to
20  the request for production, are these all out of one
21  account, or are they mixed together between the accounts
22  that you had during this time frame?
23     A.  That's just one account, the 8381.
24     Q.  And is that the same account that was used to
25  create the ledger for the business?

## Page 36

1      A.  Yes.
2      Q.  Have you ever had a savings account?
3      A.  It was just that personal one, with the
4  personal documents, but no money was really kept in it.
5      Q.  Is it Bank of America?
6      A.  Yes.
7      Q.  Have you ever had a retirement account?
8      A.  No.
9      Q.  Have you ever had a stock brokerage account?
10     A.  No.
11     Q.  Let's talk about the tax returns that have
12  been produced.
13     A.  There's one more in here, too.
14     Q.  All right.
15     A.  That's the other part of 2015 and then 2013.
16     Q.  So in 2013 -- where were you living in 2013?
17     A.  At the Mariposa house.
18     Q.  And your income is reflected as $28,190 in
19  2013.  And that's self-employment income from operation
20  of your business?
21     A.  Correct.
22     Q.  And in 2014 where were you living?
23     A.  The Mariposa house.
24     Q.  And your business income is claimed at
25  $21,500; is that correct?  Do you want to see?

## Page 37

1      A.  Yes, let me see.  Yes.  But I had to -- I
2  think I amended the 2015 one.
3      Q.  This is 2014.
4      A.  Right.
5      Q.  You think you amended 2014?
6      A.  Because I didn't put the interest on the Jet
7  loan in 2014, so I carried it over to the 2015.  So it
8  should have been 2014, but in 2015 I didn't use the
9  accountant to do it.
10     Q.  So in 2015 did you prepare your tax return
11  yourself?
12     A.  Yes.
13     Q.  And this is the one you think you have had to
14  amend?
15     A.  Yes.
16     Q.  Did you use the same accountant to do the
17  amended return, Vargas CPA, PC?
18     A.  Not in 2015.  I mean -- yes, not in 2015 --
19     Q.  Who did you use?
20     A.  -- return.
21         I didn't use anybody.
22     Q.  Who did the amended return?
23     A.  No, no, no.  I was saying that the costs from
24  2014, we didn't put the interest on, so I put them on
25  the 2015 one.

## Page 38

1  Q. So in 2015 was your claimed business income
2  $3,835?
3  A. Yes.
4  Q. But your sales for 2015 in Premier Builders
5  was $388,500?
6  A. Right.
7  Q. In 2016 do you have any idea what your income
8  was?
9  A. It was on the bottom of the other summary, 356
10 Silver Star. I think it was under the financial
11 statements folder. I'm not sure offhand. It was at the
12 bottom of it.
13 Q. Let me hand you the Silver Star documentation
14 you are referencing.
15 A. So Silver Star, the net profit, I mean without
16 doing tax deductions, was 10,000.
17 Q. $10,108.27?
18 A. Yes.
19 Q. That's your earned income for calendar year
20 2016?
21 A. Right.
22 Q. Will you be preparing your 2016 tax return for
23 filing on or before April 15 of this year?
24 A. I probably will.
25 Q. Are you going to do it yourself, or are you

## Page 39

1  going to ask for assistance?
2  A. I will probably have assistance, just to make
3  sure.
4  Q. Are you using Vargas?
5  A. No, I'm not.
6  Q. Why not?
7  A. The girl who I used to work with under him,
8  she left his office, so I don't use him anymore.
9  Q. Who is the person you use?
10 A. Her name was Tammy, I believe. Tammy -- I
11 would have to get it for you. She actually left in
12 2014, and that's why I didn't do 2015 there. Or she
13 left sometime during that time.
14 Q. With regard to the request for production on
15 deeds and conveyances of real property in your name or
16 your spouse's name, I'm going to hand you the file that
17 includes the deeds that you provided here, and I would
18 like you to identify the properties that have been
19 deeded into your name in the last five years that you
20 have produced here.
21 A. This is 356 Silver Star. This was her
22 (indicating) property.
23 Q. Whose property?
24 A. Pam's.
25    This was my personal residence.

## Page 40

1  Q. Okay.
2  A. Personal residence. The Franklin Trail. This
3  was the Silver Star, which I was financing, and the
4  Silver Star financing, and Silver Star transfer of deed.
5  And this is just mortgage information.
6  Q. The Colonial information is mortgage for what?
7  A. My property.
8  Q. Your home?
9  A. Uh-huh.
10 Q. Do you have the closing documents from the
11 various sales that you have closed through Premier
12 Builders since 2013?
13 A. I do have them.
14 Q. Are they maintained with the cost documents
15 related to the construction of the homes?
16 A. Yes.
17 Q. With regard to contracts relating to the sales
18 of properties, you produced the one contract between
19 Travis Young d/b/a Premier Builders and Jesus and
20 Rebecca Reza. Have you produced some more?
21 A. This is the Silver Star one. And then I
22 didn't know if you needed hers or not.
23 Q. With regard to the Silver Star contract that
24 you have handed me, who prepared the original of this
25 contract?

## Page 41

1  A. The other party, Sandy Messer organized it.
2  Q. What title company did you use to close this?
3  A. That one was Lone Star.
4  Q. Can you remember who the closer was on the
5  deal?
6  A. Yes. It's Tim Wieland.
7  Q. With regard to the financial statements that
8  you have produced, can you tell me what it is that these
9  three documents represent -- or these three groups of
10 documents that you have provided to me that relate to
11 financial statements?
12 A. This was my cost breakdown per job, and then,
13 I mean, I guess I had a simple way of accounting. And
14 so just the final costs, what the total build costs were
15 and then what I sold it for.
16 Q. And these are basically the job summaries or
17 the cost accounting on 448 San Clemente, Montoya Oak and
18 Silver Star?
19 A. Right.
20 Q. Is that right?
21 A. Uh-huh.
22 Q. Did you ever prepare a financial statement for
23 Premier Builders that included assets, liabilities and
24 owner's equity?
25 A. No, I never did.

Page 42

1    Q. Did you ever have an accountant do that for
2  you?
3    A. No.
4    Q. Did Premier Builders ever own any personal
5  property?
6    A. As far as --
7    Q. Tools.
8    A. I did give you my tool inventory. I never
9  really had many tools, but I guess my truck would be the
10  only thing, if that's -- well --
11    (Exhibit marked, 2.)
12    Q. (BY MR. HAUGLAND) Why don't we go ahead and
13  mark this -- we have got Exhibit 1, so let's go to
14  Exhibit 2, because this is kind of --
15    A. The vehicle mileage were on there.
16    Q. That's the Premier Builders Inventory List
17  that you prepared and provided to me today?
18    A. Correct.
19    Q. And what all do you have on there?
20    A. It's just --
21    MR. NEVAREZ: Do you have another copy of
22  that for me?
23    MR. HAUGLAND: He brought this.
24    MR. NEVAREZ: Yes, I know. Since you
25  entered it into an exhibit, I would like to have a copy.

Page 43

1    MR. HAUGLAND: Well, I mean, can we wait
2  till we ask questions about it and make a copy on the
3  break?
4    MR. NEVAREZ: Well, I kind of would like
5  to follow along. I can't see from here.
6    MR. HAUGLAND: Well, your client brought
7  it. If you want to break so we can make a copy of it
8  before I ask questions, I guess we can.
9    MR. NEVAREZ: Well, go ahead, since it's
10  just a small document. Are there going to be other
11  documents that you are going to be entering into
12  exhibits?
13    MR. HAUGLAND: The ones that I brought
14  with me I have extra copies for you. I'm not planning
15  on necessarily making exhibits of all the documents at
16  this point. But this one I didn't -- since it's a
17  single page, I was afraid it was going to get lost.
18    MR. NEVAREZ: Okay. Go ahead.
19    Q. (BY MR. HAUGLAND) What all did you include as
20  business assets of Premier Builders?
21    A. Just some small value tools and my truck, and
22  then I just put the vehicle mileage on the sheet.
23    Q. You also have an "Audi Q5 Milage." Who does
24  the Audi belong to?
25    A. That's my wife's.

Page 44

1    Q. And what's the Infinity G37?
2    A. That's hers, too. I mean her car.
3    Q. And so the 2008 F-250, is that your car?
4    A. Uh-huh.
5    Q. Do you have any other vehicles that you and
6  your wife own?
7    A. No.
8    Q. With regard to documents related to financing
9  of your business, would it be fair to say that these two
10  Uniform Residential Loan Application groups of documents
11  represent the totality of the loan documentation in your
12  possession relating to Premier Builders?
13    A. Yes, it is.
14    Q. What two jobs did these relate to, if you can
15  tell me?
16    A. They were both for Silver Star. Yes, they
17  were both for Silver Star.
18    Q. And who was the lender?
19    A. The broker was Marquise Lending. The actual
20  lender was Jet Private Loans.
21    Q. Do you know the person behind Jet Private
22  Loans?
23    A. No, I don't. I never met him.
24    Q. Did you ever make a loan application to Binary
25  Investments?

Page 45

1    A. Yes. Actually one of those was, I think, an
2  application. It didn't go through. I mean, we never
3  consummated the deal. But the Jet loan did.
4    Q. Why didn't the Binary Investments loan go
5  through?
6    A. Right when I was doing that loan, that's when
7  I sold the property.
8    Q. Is that the Silver Star property?
9    A. Yes.
10    Q. How much were you going to borrow from Binary?
11    A. It was 350-. It was mainly to pay off the Jet
12  loans.
13    Q. Was there more than one Jet loan?
14    A. There were two Jet loans on the Silver Star
15  for 250-.
16    Q. What was going to be done with the extra
17  $100,000 you were borrowing from Binary?
18    A. Well, at that time I still -- finishing the
19  house, so I was going to use it for construction. But I
20  had still owed money to Jet loans. I don't remember
21  exactly how much. So it wasn't going to come out to
22  that much that they were going to end up giving out of
23  that 350-.
24    Q. We were talking about cars and trucks. Do the
25  LLCs that are owned by your wife own any cars or trucks?

## Page 46

1    A.  No.

2    Q.  The cars and truck titles, are those what you

3  brought me here today?

4    A.  Yes.  That one is my Ford, and then that one

5  in the Infinity.

6    Q.  Do you not have the title for the Audi Q5?

7    A.  No, because that one is financed.  The

8  Infinity was totaled and we bought it back and I

9  repaired it.

10    Q.  What other documents have you produced today?

11    A.  Just insurance documents of the vehicles.

12    Q.  Have you produced your homeowner's insurance

13  policy?

14    A.  No.  I need to ask Kathleen Hernandez what's

15  on it right now.

16    Q.  Who did you buy the insurance for your

17  homeowner's through?

18    A.  I never purchased it.  She said she has just

19  had the same insurance on the property since -- it's

20  been a while now, six years.  So I need to find out.

21    Q.  So who has the insurance?

22    A.  I believe it's still in her name through

23  her -- that her lender makes her have, the Colonial

24  Savings.

25    Q.  That's Kathryn [sic] Hernandez?

## Page 47

1    A.  Uh-huh.

2    Q.  She is your lender?

3    A.  Right.

4    Q.  She was the seller, and she let you wrap her

5  original mortgage?

6    A.  Correct.

7    Q.  Other than your Texas driver's license, do you

8  have any other licenses?

9    A.  No, I don't.

10    Q.  Do you have any memberships in any other

11  organizations or associations?

12    A.  No.

13    Q.  During the last four years, have you or your

14  wife spent more than $500 in acquiring any personal

15  property?

16    A.  The only ones I can think of is a new bed, new

17  mattress.  I really didn't buy many items, nor did she.

18    Q.  Who did you buy the bed and mattress from?

19    A.  Mattress firm, I think.  I'm not sure.

20    Q.  Would you have spent more than $500 in any one

21  expenditure with Amazon.com?

22    A.  A lot of times the Amazon was for building

23  supplies.

24    Q.  What monthly credit cards -- strike that.

25      What cards have you used over the last

## Page 48

1  four years?

2    A.  The Chase business one -- Chase, Inc., I mean.

3  There was a Capital One.  The Capital One was a business

4  one.  And there was a Bank of America personal, and the

5  Citi card that was -- well, the City card was business

6  too.

7    Q.  So --

8    A.  And a Chase -- there's another Chase

9  Southwest.

10    Q.  So you have a Chase -- what -- MasterCard?

11    A.  It was Chase, Inc. Visa.  Yes, it was a Visa.

12    Q.  And then you have a Capital One?

13    A.  Uh-huh.  Yes.

14    Q.  And you have a Citi card?

15    A.  Yes.

16    Q.  And you have a Chase Southwest?

17    A.  Yes.

18    Q.  You did not produce those statements.  Do you

19  have access to those statements?

20    A.  I could probably get them.  Since they were

21  closed, I don't know how difficult they are.

22    Q.  You didn't keep the statements?

23    A.  I do have some of them.

24    Q.  I would still like to see them.

25    A.  Like I said, the main one I used was the

## Page 49

1  Chase, Inc. card.  Of course, because I was getting

2  points at that time.  But it was a paid-in-full-monthly

3  card.

4    Q.  So is it fair to say that none of the

5  agreements between you and your father have ever been in

6  writing?

7    A.  Correct.

8    Q.  And I asked you to provide the checking

9  account statements for your wife.  Why have you not

10  produced those today or yesterday?

11    A.  The same reason, just because it was her

12  separate property.

13    Q.  I asked you to produce all form 940's and form

14  941's prepared for Premier Builders.  And I think you

15  indicated yesterday you have never prepared those; is

16  that right?

17    A.  Correct.

18    Q.  And that's because you have never had any

19  employees?

20    A.  Right.

21    Q.  Do either of the LLCs that you are currently

22  working for have any employees besides yourself?

23    A.  No.

24    Q.  I asked you to produce your wife's Texas

25  driver's license and Social Security card.  You have not

## Page 50

1    done that, have you?
2       A.  No.
3       Q.  Why not?
4       A.  Mainly a privacy thing, too.
5       Q.  Does she have a Texas driver's license or a
6    New Mexico driver's license?
7       A.  I don't know.  I think she switched it to
8    Texas.
9       Q.  And you have indicated that your homeowner's
10   insurance policy -- you don't have a copy of it?
11      A.  No.  I need to do some research into that.
12      Q.  Do the LLCs that you are currently working for
13   have any property or inventory from which they work?
14      A.  Do they have any property?  Please repeat.
15      Q.  Let me rephrase.  Does the LLC own any tools?
16      A.  No.
17      Q.  Does the LLC own any equipment?
18      A.  Not that I'm aware of.
19      Q.  Have you ever received a rendition form and a
20   request from the El Paso Central Appraisal District to
21   submit a rendition of any personal property used in the
22   operation of Premier Builders?
23      A.  I have never received one.
24      Q.  Have you ever provided one?
25      A.  No, I never have.

## Page 51

1       Q.  Have you produced any of the books and records
2    of Premier Builders & Design, LLC?
3       A.  No.
4       Q.  Why not?
5       A.  Since that's all the LLC questions -- since
6    it's my wife's company.
7       Q.  Have you produced any of the documents
8    relating to RUF Developers, LLC or RUF, LLC?
9       A.  The same, since it's my wife's company.
10      Q.  What's the legal name of that entity, if you
11   know?
12      A.  Of which one?
13      Q.  RUF, R-U-F.
14      A.  It's RUF Developers.
15      Q.  You indicated that RUF does own a lot,
16   correct?
17      A.  Yes.
18      Q.  Who was that lot acquired from?
19      A.  It was acquired from High Mountain, Limited.
20      Q.  That's the one -- is that the one where
21   financing was provided?
22      A.  Well, both of them.  So the Premier Builders &
23   Design and the RUF Developers.
24      Q.  So was the consideration of the promissory
25   note and deed of trust that Premier Builders is

## Page 52

1    obligated to repay?
2       A.  Not on RUF developers.
3       Q.  So it has a separate note --
4       A.  Yes.
5       Q.  -- and deed of trust?
6       A.  Uh-huh.
7       Q.  You were asked to provide the itemized list of
8    items purchased to build or renovate 724 Montoya Oak
9    Lane.  Is that the financial statement that you provided
10   to me --
11      A.  Yes.
12      Q.  -- that we discussed earlier?
13          And the 356 Silver Star you likewise
14   produced for me?
15      A.  Correct.
16      Q.  You haven't done that for the Las Cruces
17   property that was acquired from Ms. Snow, have you?
18      A.  No, since that was the LLC's, my wife's.
19      Q.  And likewise, you haven't produced the costs
20   related to 354 Rocky Point, correct?
21      A.  Correct.
22      Q.  And that's because it's an LLC property?
23      A.  Uh-huh.
24      Q.  Is this a yes?
25      A.  Yes.

## Page 53

1       Q.  You were asked to produce a copy of the
2    certificate of completion and payment plan developed
3    with the credit counseling agency identified in your
4    original bankruptcy filing.
5          Is this the certificate of counseling
6    that you have produced here today?
7       A.  Correct.  And I asked Cheryl, and she said
8    since -- something about since I was upside-down there
9    was no payment plan.
10      Q.  You indicated -- are you still paying for the
11   truck that you are driving?
12      A.  No.
13      Q.  Does your wife have a retirement account?
14      A.  I mean, she does have a retirement account.
15      Q.  And you have not produced the statements
16   related to the retirement account, correct?
17      A.  Correct.
18      Q.  Other than the loan applications that you have
19   provided, you have not provided any loan documents
20   related to the lots acquired by Premier Builders &
21   Design, LLC or by RUF Developers, LLC, correct?
22      A.  Correct.
23      Q.  And you have not done that because you contend
24   that they are your wife's separate property; is that
25   right?

## Page 54

1   A. Correct.
2   Q. The accountings that you have provided on the
3   construction of the homes for Premier Builders, would
4   there be receipts in there for the materials that were
5   purchased related to those properties?
6   A. Uh-huh. Yes. Or -- physical receipts --
7   Q. Yes.
8   A. -- you mean on the --
9   Q. Is there backup to the financial information
10   provided for those home constructions?
11   A. I mean, the main backup is -- pretty much
12   everything ran through my bank account, so I would use
13   that. I mean, I do have a lot of receipts.
14   Q. Are you on any medications today?
15   A. Huh-uh.
16   Q. Is that a no?
17   A. Oh, yes. No.
18   Q. Have you ever been in the military?
19   A. No.
20   Q. Have you ever been convicted of a crime?
21   A. No.
22   Q. Have you ever been arrested?
23   A. I won't answer that.
24   Q. What now?
25   A. I can't answer that.

## Page 55

1   Q. You can't answer that, or you won't answer
2   that?
3   A. No, I won't answer it.
4   Q. Have you ever been fired from a job for cause?
5   A. No.
6       (Exhibit marked, 3.)
7   Q. (BY MR. HAUGLAND) Let me hand you what's been
8   marked Exhibit 3 for identification. And I'll represent
9   to you that this is a copy of page 1 through 51 of your
10   initial bankruptcy filing, including the voluntary
11   petition and your schedules.
12       Do you recognize these documents?
13   A. Yes.
14   Q. Were these documents true and correct and
15   complete as of February 3, 2017?
16   A. Yes.
17       (Exhibit marked, 4.)
18   Q. (BY MR. HAUGLAND) Let me hand you what's been
19   marked Exhibit 4 for identification. Do you recognize
20   that document?
21   A. Yes.
22   Q. These are the Statement of Financial Affairs
23   that you filed along with the petition and schedules
24   when you filed for bankruptcy, correct?
25   A. Yes.

## Page 56

1   Q. And to the best of your knowledge, were those
2   documents true and correct and accurate as of the date
3   of filing on February 3, 2017?
4   A. Yes.
5       (Exhibit marked, 5.)
6   Q. (BY MR. HAUGLAND) Let me hand you what's been
7   marked Exhibit 5 for identification. These are amended
8   Statement of Financial Affairs that I believe you filed
9   in your bankruptcy on March 21, 2017.
10       Do you recognize these documents as that?
11   A. Yes.
12   Q. And what did you change from your original
13   Statement of Financial Affairs to your amended Statement
14   of Financial Affairs?
15   A. I had forgot that I did the Jet Private Loan
16   financial statement for them.
17   Q. When you filed for bankruptcy, you indicated
18   that you were receiving $3,000 a month in income.
19   A. Correct.
20   Q. From what source?
21   A. From my parents.
22   Q. Have you had any other source of income in
23   2017?
24   A. No.
25   Q. Are your parents continuing to provide you

## Page 57

1   with $3,000 per month?
2   A. Yes.
3   Q. The Audi Q5, you indicated it was in your
4   wife's name only?
5   A. Yes.
6   Q. Are you making the payments on that loan?
7   A. I mean -- yes, she is.
8   Q. She is or you are?
9   A. I mean she is.
10   Q. When you closed on 356 Silver Star, who was
11   the seller of that property?
12   A. My d/b/a was.
13   Q. Did Premier Builders, LLC have anything to do
14   with that closing?
15   A. No. I don't think it was even formed yet at
16   that time.
17   Q. 356 Silver Star was sold for $675,000; is that
18   right?
19   A. Correct.
20   Q. And how much profit did you make off of the
21   Silver Star sale?
22   A. It's what I had in there. I mean, before
23   going through the taxes of 2016, it was like 10,000, I
24   believe.
25   Q. Whose bank account were the sales proceeds

**Page 58**

1  from Silver Star deposited into?
2      A.  It was deposited into my account, then I
3  transferred it to my father.
4      Q.  And the account that the sales proceeds were
5  deposited in, would that be the account that you
6  provided me the statements for?
7      A.  Correct.  It's the 8381.
8      Q.  On your loan application with Binary
9  Investments you stated your monthly gross income was
10 $9,000.  What did you base that on?
11     A.  When I did those loans I was just
12 projecting -- I was projecting to sell Montoya and
13 Silver Star in the same year, and for much more
14 anticipated profits.  That didn't happen.
15         Are you asking on the Binary one?
16 Q.  Yes.
17     A.  Yes.  The same thing.  And the loan officer
18 said, Yes, just do your projected income for the
19 upcoming year.
20     Q.  Are you continuing to get family assistance
21 after filing this bankruptcy petition?
22     A.  Yes.
23     Q.  Does your wife have a general contractor's
24 license?
25     A.  Yes.

**Page 59**

1      Q.  Why?
2      A.  Well, the LLC has the general contractor
3  license.
4      Q.  Why?
5      A.  Why does she have one?
6      Q.  Yes, sir.  Why does she have one?
7      A.  In order to pull permits with the City.
8      Q.  Does she have to have a license because you
9  don't?
10     A.  I mean --
11         MR. NEVAREZ: I mean, I think that's
12 really just speculation as to why she has to have a
13 license because he doesn't.
14     A.  I mean anybody could have a license.  You can
15 go down to the City and pay $100.
16     Q.  (BY MR. HAUGLAND) Is your general contractor's
17 license on hold with the City?
18     A.  Yes, it is.
19     Q.  Why?
20     A.  Because of your client.
21     Q.  She is able to stop a license from being
22 issued?
23     A.  Uh-huh.
24     Q.  How?
25     A.  By nonstop calling the City and complaining

**Page 60**

1  until they take initiative and falsely put it on hold
2  that way.
3      Q.  City inspectors looked at my client's house
4  and found multiple problems with it.  Hasn't the City?
5      A.  I believe that -- I mean, I wouldn't say they
6  found the problems, but they went and inspected it.
7      Q.  They didn't find anything wrong with it after
8  they inspected it?
9      A.  Ron Roth told me what to do to get my license
10 off, and I did it, and then he went back on his word.
11 And not much I can do.
12     Q.  Prior to pulling the license for her LLC, did
13 your wife have any construction experience?
14     A.  I mean, if you look at most builders, a lot of
15 them don't have experience, you will come to learn.  I'm
16 not saying she does or doesn't have experience.
17     Q.  In order for your wife to open Premier
18 Builders & Design, LLC, did you have to give her
19 permission to use the name Premier Builders after you
20 had used it for several years?
21     A.  No, I didn't, since mine was just a sole
22 proprietor, since that's an LLC.
23     Q.  So she didn't ask for your permission to use
24 Premier Builders as the name of her LLC?
25     A.  Huh-uh.

**Page 61**

1      Q.  Is that a no?
2      A.  Oh, no.
3      Q.  And so I understand, the first project that
4  Premier Builders did was the remodel of the Las Cruces
5  property, correct?
6      A.  Correct.
7      Q.  And the second project of Premier Builders &
8  Design, LLC is to build the house at Rocky Point?
9      A.  Correct.
10     Q.  And that price is listed for sale for how
11 much?
12     A.  898,000.
13     Q.  And the financing for the Rocky Point house
14 has been provided by your father, Keith Young?
15     A.  Correct.
16     Q.  And there is a note and deed of trust on that
17 loan?
18     A.  Correct.
19     Q.  Have you had to sign that note or deed of
20 trust?
21     A.  No.  I'm not allowed to.
22     Q.  Has your wife signed a personal guarantee on
23 that loan?
24     A.  No, she hasn't.
25     Q.  Why did your wife create RUF Developers, LLC

## Page 62

1  if she already had an LLC, Premier Builders?

2      A.  Just to have it under a separate holding.  It

3  was under the advice of Mr. Kirk.

4      Q.  Other than the two lots and the house that are

5  owned by your wife's LLCs, does it have any other

6  assets, to your knowledge?

7      A.  No, it doesn't.

8          MR. HAUGLAND:  Let's take a break.

9          (A break taken, 12:41 to 12:54.)

10      Q.  (BY MR. HAUGLAND)  Mr. Young, when you were

11  doing business as Premier Builders, did you send form

12  1099's to all your subcontractors?

13      A.  Yes, I did.

14      Q.  Were those form 1099's accurate?

15      A.  They should be.

16      Q.  Did you ever overstate in a 1099 any amounts

17  paid to subcontractors?

18      A.  I don't believe so.

19      Q.  How long have you been getting $3,000 a month

20  in family assistance?

21      A.  My father had been helping me for quite a

22  while because he can't stand what she did to me and this

23  whole situation.

24      Q.  Would he give you that $3,000 in a check or in

25  cash?

## Page 63

1      A.  It would be different, different each time.

2  Just -- I mean recently it's been 3,000.  It was

3  different in the past, different amounts.

4      Q.  Would you deposit it in your checking account?

5      A.  Sometimes.

6      Q.  Which checking account?

7      A.  Well, I mean, it would always be in 8381.

8      Q.  Is that your personal account or is that the

9  d/b/a account?

10      A.  The d/b/a.

11      Q.  In 2015 why were you making payments to

12  Escrow, Inc.?

13      A.  That was the Jet loan.  They use Escrow as

14  their agent -- I mean their -- to manage it, the

15  payments.

16      Q.  Who is George Rosales?

17      A.  He was one of my subcontractors.

18      Q.  Did he have a business name?

19      A.  No.  Most of those guys don't.

20      Q.  Which car did Bank of America finance?

21      A.  It was my F-250.

22      Q.  What financing did you have at FirstLight

23  Federal Credit Union?

24      A.  FirstLight?  I'm not sure.  I never had

25  financing there.

## Page 64

1          (Exhibit marked, 6.)

2      Q.  (BY MR. HAUGLAND)  Can you tell me what

3  Exhibit 6 is?

4          MR. NEVAREZ:  Let me see it.

5      A.  It was a car payment.

6      Q.  (BY MR. HAUGLAND)  For what car?

7      A.  It was my wife's.

8          (Exhibit marked, 7.)

9      Q.  (BY MR. HAUGLAND)  Let me hand you what's been

10  marked Exhibit 7.  What's that?

11      A.  Same thing.

12      Q.  It's a car payment that you made for your

13  wife?

14      A.  Yes, at that time.

15          (Exhibit marked, 8.)

16      Q.  (BY MR. HAUGLAND)  Let me hand you what's been

17  marked as Exhibit 8 for identification.  Can you tell me

18  what that is?

19      A.  That's for the Infinity car.

20      Q.  Who is Letty Mata?

21      A.  Letty Mata?  Oh, she is a drafter.

22      Q.  What plans has she drafted for you?

23      A.  She has done Silver Star.  She has done some

24  concept ones for me, too.  She did -- I think she did

25  hers (indicating).  Oh, no, no.  That was Rafead.  She

## Page 65

1  did Silver Star, and then she has just done some concept

2  drawings, too.

3      Q.  Who did the plans for 356 Rocky Point?

4      A.  Mata did.  No, that wasn't Mata.  I had the

5  architect.  What was his name?  Ed McCormick.

6      Q.  Ed McCormick?

7      A.  Uh-huh.

8      Q.  What checking account do you use since

9  September of 2016?

10      A.  That was my only one that I was using.  Oh,

11  since September?

12      Q.  Yes.

13      A.  I haven't really written any more checks since

14  then.

15      Q.  Have you understood my questions here today?

16      A.  Yes.

17      Q.  Are there any answers to any of my questions

18  that you would like to change at this point?

19      A.  No.

20          MR. HAUGLAND:  Thank you, sir, for

21  appearing here today.  I'll pass the witness.

22          MR. NEVAREZ:  I have no questions.

23          (Deposition concluded at 1:06 p.m.)

24

25

Page 66

                    C E R T I F I C A T E

STATE OF TEXAS        )
COUNTY OF EL PASO     )

        I, Mary Procell, Certified Shorthand Reporter
of the State of Texas, hereby certify that this
transcription is a true record of the testimony given in
said proceedings, and that said transcription is done to
the best of my ability.
        Given under my hand and seal of office on this
14th day of April, 2017.



                    _____
                    MARY PROCELL
                    Certified Shorthand Reporter
                    Of the State of Texas
                    Certificate Number 2812
                    Date of Expiration of
                    Certificate: 12/31/18
                    Firm Registration Number: 372

---

Page 68

        I, TRAVIS RYAN YOUNG, have read the foregoing
deposition and hereby affix my signature that same is
true and correct, except as noted above.


                    _____
                    TRAVIS RYAN YOUNG


THE STATE OF _____)
COUNTY OF _____)



        Before me, _____, on this
day personally appeared TRAVIS RYAN YOUNG, known to me
(or proved to me under oath or through
_____) to be the person whose name
is subscribed to the foregoing instrument and
acknowledged to me that they executed the same for the
purposes and consideration therein expressed.
        Given under my hand and seal of office this
_____ day of _____, 2017.




                    _____
                    NOTARY PUBLIC IN AND FOR
                    EL PASO COUNTY, TEXAS
                    MY COMMISSION EXPIRES _____

---

Page 67

        CHANGES AND SIGNATURE
TRAVIS RYAN YOUNG              APRIL 4, 2017
PAGE  LINE  CHANGE          REASON
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____
        _____



IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.

Dated: October 26, 2017.

_____
H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TRAVIS RYAN YOUNG | § | Case No. 17-30163-HCM |
|      Debtor. | § | |
| PAMELA W. YOUNG | § | |
|      Plaintiff, | § | |
| v. | § | Adversary No. 17-03010-HCM |
| | § | |
| TRAVIS RYAN YOUNG | § | |
|      Defendant. | § | |

---

### ORDER MODIFYING SUBPOENA ISSUED
### TO BRITTANY YOUNG IN ADVERSARY PROCEEDING NO. 17-03010

On October 26, 2017, the Court conducted a hearing on the Motion to Quash Third-Party Subpoena to Brittany Young ("Motion")(dkt# 22) filed by Travis Ryan Young ("Defendant") in this adversary proceeding no. 17-03010. A Response to the Motion (dkt# 25) was filed by Pamela W. Young ("Plaintiff"). Counsel for Defendant and counsel for Plaintiff appeared at the hearing. Through the Motion, Defendant seeks to quash the Subpoena to Produce Documents directed to Brittany Young dated September 14, 2017 issued by Plaintiff in this adversary proceeding no. 17-03010 ("Subpoena").

The Court has considered the Motion (including the Declaration of Brittany Young attached to the Motion), the Response, the Subpoena, the pleadings in this adversary proceeding, and the arguments of counsel. The Court finds that the Subpoena issued in

1



this adversary proceeding 17-03010 to Brittany Young should be modified as set forth in this Order to require production only of relevant documents that are not unduly burdensome, for the reasons stated by the Court on the record at the hearing.

**IT IS THERFORE ORDERED AND NOTICE IS HEREBY GIVEN AS FOLLOWS:**

1. The Motion to Quash Third-Party Subpoena to Brittany Young ("Motion")(dkt# 22) filed by Travis Ryan Young ("Defendant") in this adversary proceeding no. 17-03010 is hereby GRANTED to the extent that the Court will modify the Subpoena as set forth below.

2. The Subpoena to Produce Documents directed to Brittany Young dated September 14, 2017 issued by Plaintiff in this adversary proceeding no. 17-03010 ("Subpoena") is hereby modified as follows ("Modified Subpoena"):

    (A) Brittany Young shall be required to only produce documents which are dated or created during the time period of January 1, 2015 through January 31, 2017; and

    (B) Brittany Young shall not be required to produce the documents described in paragraphs 6, 9, 10, 15, 16, 46, 48, 56, 58, 59, and 64 of the Subpoena.

3. By November 16, 2017, Brittany Young shall produce the documents requested by Plaintiff in the Modified Subpoena to counsel for Plaintiff. Brittany Young shall produce the documents by making the documents available for inspection and copying by Plaintiff's counsel by November 16, 2017, or by delivering copies of the documents to Plaintiff's counsel by November 16, 2017.

4. Counsel for Plaintiff shall immediately cause a copy of this Order together with the Subpoena to be served upon Brittany Young, and shall file proof of service with the Court.

5. Any relief requested in the Motion which is not expressly granted in this Order is hereby DENIED.

# # #

# UNITED STATES BANKRUPTCY COURT

_____WESTERN_____ District of _____TEXAS_____

El Paso Division

In re TRAVIS RYAN YOUNG
_____
Debtor

Case No. _17-30163-hcm_

_(Complete if issued in an adversary proceeding)_

Chapter _7_____

PAMELA YOUNG
_____
Plaintiff

v.

TRAVIS RYAN YOUNG, Individually and d/b/a Premier Builders    Adv. Proc. No. _17-03010-hcm_
_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:    Brittany Young
_____
_(Name of person to whom the subpoena is directed)_

[x] _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:    See attached Amended Notice of Third-Party Request for Production to Brittany Young.

| PLACE    609 Montana Avenue, El Paso, Texas 79902 | DATE AND TIME November 16, 2017 @ 3:00 p.m. |
|---|---|

[ ] _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    _October 26, 2017_

CLERK OF COURT

OR

_____                    _____
Signature of Clerk or Deputy Clerk                    Attorney's signature

The name, address, email address, and telephone number of the attorney representing _(name of party)_
_Pamela Young_____ , who issues or requests this subpoena, are:

_Corey W. Haugland, James & Haugland, P.C., 609 Montana Avenue, El Paso, Texas 79902  (915) 532-3911_

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

**EXHIBIT**

P-3

## PROOF OF SERVICE
(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*:   Brittany Young
on *(date)* 10/27/17

[X] I served the subpoena by delivering a copy to the named person as follows: Brittany Young
6647 Mariposa Drive, El Paso, Texas 79912
_____ on *(date)* 11/02/17 ; or
6:33 pm

[ ] I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____

My fees are $ 0 for travel and $ 60 for services, for a total of $ 60.

    I declare under penalty of perjury that this information is true and correct.

Date: 11/02/17

                                         _____
                                         *Server's signature* PSC # 10884

                                         Enrique Chavez EXP 5/31/20
                                         *Printed name and title*

                                         7250 N. Mesa St. C89, El Paso, TX
                                         *Server's address* 79912

Additional information concerning attempted service, etc.:

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TRAVIS RYAN YOUNG, | § | Case No. 17-30163-hcm |
| | § | |
| Debtor. | § | |
| _____ | § | |
| | § | |
| PAMELA YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 17-03010-hcm |
| | § | |
| TRAVIS RYAN YOUNG, Individually | § | |
| and d/b/a PREMIER BUILDERS, | § | |
| | § | |
| Defendant. | § | |

## AMENDED NOTICE OF THIRD-PARTY REQUEST FOR PRODUCTION

TO: BRITTANY YOUNG, who may be served at her usual abode located at 6647 Mariposa, El Paso, Texas 79912.

PLEASE TAKE NOTICE THAT, pursuant to Federal Rule of Civil Procedure 45, you are requested to produce the documents and tangible things that are identified in the attached Exhibit "A", "Documents To Be Produced." The items are to be produced to Corey W. Haugland, James & Haugland, P.C., 609 Montana Avenue, El Paso, Texas 79902, via United States Mail or hand-delivery, on or before 3:00 P.M. on November 16, 2017.

This Amended Notice of Third-Party Request for Production and the Subpoena attached as Exhibit "B" have been prepared in conformity with the Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017 attached as Exhibit "C".

Client Files\0012805\00101\00511506.WPD          SUBPOENA TO ISSUE

Respectfully submitted,

JAMES & HAUGLAND, P.C.
P.O. Box 1770
El Paso, Texas 79949-1770
Phone:  915-532-3911
FAX: (915) 541-6440

By:  _____
Corey W. Haugland
State Bar No. 09234200
Jamie T. Wall
State Bar No. 24028200
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Corey W. Haugland, hereby certify that on the _24th_ day of October, 2017, I electronically filed the foregoing Amended Notice of Third-Party Request for Production to Brittany Young with the Clerk of the Court using the CM/ECF System, which will give notice of the filing of this instrument to:

Michael R. Nevarez
Law Offices of Michael R. Nevarez
P.O. Box 12247
El Paso, TX 79913

_____
Corey W. Haugland

Client Files\0012806\0101\00511390.WPD     SUBPOENA TO ISSUE

## DEFINITIONS

1.  The terms "you" or "your" or "Brittany" as used herein refers to Brittany Young, and where applicable, her agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with her or under her control.

2.  "Document" as used herein, means, by way of example and without limitations, the originals or true copies of the following items in your possession, custody, or control, or known to you or your counsel, whether printed, computerized, microfilmed, videotaped, recorded or reproduced by any other mechanical process or medium of expression, or written or produced by hand and whether or not claimed to be privileged, confidential, or personal: the final versions and all prior drafts of contracts; agreements; notes (including secretarial notes); notebooks; work notes; e-mails; work papers; communications (including intra-departmental communications and inter-company communications); correspondence; statements; reports; telegrams; agendas; forms; memoranda; bulletins; appointment books; logs; messages; diaries; texts; manuals; reference works and materials; samples of materials; depositions; analyses; projections; damage projections; forecasts; statistical Statements; financial records; reports; charts; brochures; purchase orders; estimates; computer inputs and outputs; calculations; expert reports; compilations of data; demonstrative evidence such as physical models, sketches, charts, graphs, plans, drawings, etc.; journals; billings; billing Statements and records; receipts; invoices; data compilations; slides; sketches; graphics; charts; movies; videotapes; photographs and the negatives thereof; summaries, records or minutes of meetings or conferences; expressions of Statements of policy; lists of people attending meetings or conferences; summaries, records, or reports of personal conversations or investigations; summaries, records, or reports of interviews; and all other writings, and any other similar matter, now or formerly in your possession, custody, or control or that of your counsel, or of any other agent, representative, employee, bookkeeper, accountant, expert or anyone else acting on your behalf, and includes documents used to support any conclusions or opinions reached. Any marginal comments appearing on any documents and any handwritten or other notations on any copy of a document render it original, requiring production of it or a true copy of it with such notations.

3.  The phrase "financial record" as used herein means, by way of example, and without limitations, the original or true copies of the following items, whether printed, computerized, recorded or reproduced by any other mechanical process, or written or produced by hand: monthly unaudited Statements and/or other periodic income and profit and loan Statements; periodic balance sheets; financial Statements or other Statements regarding, relating, or referring to your financial condition; federal and State income tax returns; volume of sales records; sales tax records and returns; payroll tax records and returns; cash disbursement journal(s), general ledger(s); receipts journal(s); accounts payable journal(s); and accounts

**SUBPOENA TO ISSUE**

receivable journal(s).

If you are a corporation the phrase "financial record" also includes shareholder records and other "documents" which discuss, relate, or refer to the purchase of stock by all shareholders, the number of shares held, sold, or otherwise acquired or dispensed by or to each shareholder, and any options to purchase shares; shareholder lists; franchise tax records and returns; minutes of Board of Directors' meetings; minutes of Shareholders' meetings; Articles of Incorporation and any amendments thereto; and Bylaws and any amendments thereto.

4.    The phrase "relate to" shall mean to name, to refer to either directly or indirectly, to comment upon, to analyze, review, report on, form the basis of, be considered in the preparation of, result from, or to have any logical relation or relevance to the entity, person, document, event or action pertaining to the subject matter upon which inquiry is made.

5.    "Travis Young", "your spouse" or "your husband," means and refers to Travis Ryan Young, individually and d/b/a Premier Builders, and where applicable, his agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with him or under his control.

6.    "Keith," as used herein, refers to Keith Young, and where applicable, his agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with her or under her control.

7.    "Bay Homes" as used herein, refers to Premier Builders and Design, LLC d/b/a Bay Homes, and where applicable, its agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with it or under its control.

8.    "RUF Developers, LLC" as used herein, refers to RUF Developers, LLC, and where applicable, its agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with it or under its control.

9.    "RUF LLC" as used herein, refers to RUF LLC, and where applicable, its agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with it or under its control.

10.    The "Property" as used herein, means and refers to the real property located at 448 San Clemente, El Paso, Texas 79912.

## INSTRUCTIONS

1.  If any document or response to this Request is withheld or objected to under a claim of attorney-client privilege, under a qualified privilege or for any other reason, you are instructed to identify each such document, as follows: (a) the date of the document; (b) the author and addressee(s); (c) all persons indicated as recipients of copies; (d) all persons known to you to have received the document and/or information or to have learned the substance of its contents; (e) the subject matter of the document and/or response; and (f) the specific privilege or objection alleged to be applicable or other reason for its being withheld or not answered.

2.  If you or any of your attorneys, agents or representatives had, at any time, possession or control of a document requested and such document has been lost, destroyed, purged or is not presently in your possession, custody or control, identify such document and describe the circumstances surrounding the loss, destruction, purge or separation from your possession, custody or control, indicating the dates that such circumstances occurred.

3.  If you allege that any Request contained herein is, in any manner, ambiguous, you are instructed to describe in detail the reasons for your allegations that the request is ambiguous including, but not limited to, each interpretation which you allege the specific request for discovery is subject to. Notwithstanding, you are instructed to respond, to the best of your ability, to the request for production and produce the documents requested.

4.  If you object to any of the Requests contained herein, you are instructed to identify, with specificity, the specific procedural rule(s) or substantive laws(s) upon which you base your objection.

5.  When producing documents responsive to this Request, you shall segregate the documents and affix a label to the document identifying the paragraph of this Request to which it is responsive.

SUBPOENA TO ISSUE

### DOCUMENTS TO BE PRODUCED

For the time period from January 1, 2013 through January 31, 2017, please produce the following documents:

1. All documents relating to savings bank books, records, accounts and memoranda, current as well as those that may have been canceled, whether in your name or your spouse's name, individually or jointly, or in connection with any other person or persons. This includes but is not limited to your checking and savings account at Wells Fargo Bank, JP Morgan Chase Bank, and First Light Credit Union.

2. All documents relating to all checking accounts, in your name individually or jointly with your spouse's name, or in the name of Premier Builders or Bay Homes or in connection with any other person or persons, including checkbooks, checkbook stubs, monthly statements, canceled checks and deposit slips, whether the accounts are current or may have been closed. This includes but is not limited to your checking and savings account at Wells Fargo Bank, JP Morgan Chase Bank, and First Light Credit Union.

3. All documents relating to stock certificates, bonds, or other securities in your name or your spouse's name, individually or jointly, or in connection with any other person or persons, or which may be held in an account for you, individually, or in the name of Premier Builders or Bay Homes or in conjunction with any other person or persons in any corporation.

4. All documents relating to stock brokerage accounts in your name or your spouse's name, individually or jointly, or in the name of Premier Builders or Bay Homes or in connection with any other person or persons, including but not limited to, books, records, accounts, monthly statements, statements of transactions and all other papers and memoranda thereof.

5. All documents relating to federal and state income tax returns together with the Form W-2s, Form 1099s, schedules and worksheets thereof and all other papers, and memoranda referring to any adjustment made in connection therewith for the previous four (4) years (2013, 2014, 2015, and 2016).

6. This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

7. All documents relating to deeds or conveyances of real property in your name or your spouse's name, individually or jointly, or in connection with any other person or persons, or of which you or your spouse, individually or jointly, are the legal beneficiary or equitable owner or have any interest therein.

8. All documents relating to monies received and being presently received by you or your

SUBPOENA TO ISSUE



EXHIBIT

"A"

spouse from all sources, including but not limited to salaries, wages, earnings, drawings, dividends, bonuses, sick pay, pension or retirement funds, loans, family assistance, gifts, monetary gifts, or reimbursed expenses, for the preceding four (4) years since January 1, 2013.

9. This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

10. This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

11. All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by you or your spouse, individually or jointly, including but not limited to Premier Builders or Bay Homes, or in conjunction or partnership with any other individual or individuals and/or records for any corporation which you or your spouse, individually or jointly, hold stock directly or indirectly if the corporation records are under the actual or constructive control of you or your spouse, individually or jointly.

12. All documents relating to the title of any assets held by you or your spouse, individually or jointly, or by any companies owned by you or your spouse, whether presently owned by you or your spouse, individually or jointly, or by companies owned by you or your spouse, or previously transferred within the preceding four (4) years.

13. All documents relating to bills and/or purchase price for items which you claim to be Premier Builders' or Bay Homes' business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shoes, designer clothing, watches, or any item of personalty having a price in excess of $500.00.

14. All documents relating to bills and/or purchase price for items which you claim to be your separate property and records concerning the acquisition of same.

15. This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

16. This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

17. All documents relating to financial statements together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to

**SUBPOENA TO ISSUE**

Keith Young, Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years.

18. All documents relating to debts which are owed to you or your spouse, individually or jointly, including but not limited to, promissory notes, IOU notes and/or accounts receivable.

19. All monthly credit card statements, including but not limited to the monthly statements for Barclay Card U.S., American Express, Bank of America, JP Morgan Chase Bank and Citi Cards.

20. All contracts or agreements or documents memorializing the business relationship between Brittany Young, individually and d/b/a Premier Builders or d/b/a Bay Homes and its customers including but not limited to Daniel L. Fink, R.W. Schwartz, Jesus Reza Gutierrez, Rebeca Wisbrun, Jose L. Macias-Flores, and Keith Young. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between Brittany Young, individually and d/b/a Premier Builders and the customer.

21. Any checking account statements for you, your husband, or joint statements for you and your husband, including a check register for Premier Builders or Bay Homes.

22. Your Texas driver's license and social security card.

23. Your homeowner's or renter's insurance policy including all riders.

24. All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC (or Premier Builders LLC).

25. All documents relating to financial statements, including any financial statements ever prepared for Premier Builders & Design, LLC (or Premier Builders LLC), together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Keith Young and Citi Cards) for the preceding four (4) years.

26. All contracts or agreements or documents memorializing the business relationship between Premier Builders & Design, LLC (or Premier Builders LLC) and its customers. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between RUF Developers, LLC and the

SUBPOENA TO ISSUE

customer.

27. The general ledger for Premier Builders & Design, LLC (or Premier Builders LLC).

28. The accounts receivable ledger for Premier Builders & Design, LLC (or Premier Builders LLC).

29. Any checking account statements for Premier Builders & Design, LLC (or Premier Builders LLC), including a check register for Premier Builders & Design, LLC (or Premier Builders LLC).

30. All Form 940s and Form 941s filed for the Premier Builders & Design, LLC (or Premier Builders LLC) business since January 1, 2014.

31. An inventory of vehicles, tools and equipment utilized by Premier Builders & Design, LLC (or Premier Builders LLC) in its business.

32. A copy of any renditions submitted for Premier Builders & Design, LLC's (or Premier Builders LLC's) business assets to the El Paso Central Appraisal District.

33. All documents relating to bills and/or purchase price for items which you claim to be Premier Builders & Design, LLC's (or Premier Builders LLC's) business property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shoes, designer clothing, watches, or any item of personalty having a price in excess of $500.00.

34. All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC (or Premier Builders LLC).

35. All documents relating to financial statements, including any financial statements ever prepared for RUF Developers, LLC (or RUF LLC), together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Keith Young and Citi Cards) for the preceding four (4) years.

36. All contracts or agreements or documents memorializing the business relationship between RUF Developers, LLC (or RUF LLC) and its customers. This request for documentation includes written agreements, quotes, and/or written acceptances by the customer confirming the existence of a relationship between RUF Developers, LLC and the customer.

Client Files\0012\806\00101\00511390.WPD         **SUBPOENA TO ISSUE**

37. The general ledger for RUF Developers, LLC (or RUF LLC).

38. The accounts receivable ledger for RUF Developers, LLC (or RUF LLC).

39. Any checking account statements for RUF Developers, LLC (or RUF LLC), including a check register for RUF Developers, LLC (or RUF LLC).

40. All Form 940s and Form 941s filed for the RUF Developers, LLC (or RUF LLC) business since January 1, 2014.

41. An inventory of vehicles, tools and equipment utilized by RUF Developers, LLC (or RUF LLC) in its business. If acquired since January 1, 2016, produce the purchase order, bill of sale, credit card receipt or any other documents memorializing the purchase.

42. A copy of any renditions submitted for RUF Developers, LLC's (or RUF LLC's) business assets to the El Paso Central Appraisal District.

43. All documents relating to bills and/or purchase price for items which you claim to be RUF Developers, LLC's (or RUF LLC's) business property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shoes, designer clothing, watches, or any item of personalty having a price in excess of $500.00.

44. An itemized list of items purchased to build or renovate 724 Montoya Oak Lane and its swimming pool, 356 Silver Star, the Las Cruces home (Country Club Estates #3, PLT #4, Lot 5, Block 112) and 354 Rocky Pointe.

45. Provide a copy of the Retail Installment Contracts and any related financing documents associated with the purchase of your automobiles and trucks or the purchase of any vehicles in the name of one of your businesses.

46. This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

47. Documents relating to any loans provided to Travis Young, Brittany Young, Premier Builders, Premier Builders & Design, LLC, Bay Homes, Premier Builders, LLC, RUF Developers, LLC, or RUF LLC for the purchase of lots and construction materials. Provide any documents which prove that any of the loans at issue have been paid back to the lender (or not).

48. This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

SUBPOENA TO ISSUE

49.     Your job file for all properties constructed by you or any company owned by you since January 1, 2016. That includes all invoices related to the construction. That includes all subcontracts related to the construction. That includes all closing documents, including the HUD-1 from the closing on the sale of any properties by you or any company owned by you.

50.     All documents relating to federal and state income tax returns specifically including the Form W-2s, Form 1099s, schedules and worksheets thereof and all other papers, and memoranda referring to any adjustment made in connection therewith for the previous four (4) years (2013, 2014, 2015, and 2016). This also includes the invoices and bills which support the business expenses claimed in your tax returns.

51.     All documents relating to monies received and being presently received by you from any family member or any third party, including but not limited to salaries, wages, earnings, draws, loans, family assistance, gifts, monetary gifts, or reimbursed expenses since January 1, 2013.

52.     All documents relating any agreement with your husband, Travis Young, concerning marital property, separate property or the division of your income or assets during your marriage.

53.     Your homeowner's insurance policy including all riders for the years 2015 and 2016.

54.     All credit card bills and related documents since January1, 2016.

55.     All retail installment contracts, purchase orders, contracts and/or certificates of title related to any automobile, truck, or construction equipment purchases by you or any company owned by you since January 1, 2015.

56.     This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

57.     Produce documents reflecting any payments made on these student loans since January 1, 2014.

58.     .This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

59.     This Request has been quashed by Order Modifying Subpoena entered by Judge H. Christopher Mott dated October 26, 2017. (copy attached).

60.     Produce all documents memorializing any compensation paid to Travis Young for work he has performed for you or any of your business entities.

61.     Produce all documents related to your acquisition of the real property located at 354 Rocky Pointe, including the deed, any deed of trust, any promissory note, and any contract for the

purchase of said real property.

62.  The job file for any construction that you or one of your companies has performed on the real
property located at 354 Rocky Pointe, including subcontracts, invoices for purchases of
materials, interim construction financing documents, City of El Paso permits, and job
inspection reports.

63.  Produce the promissory note, security agreement, deed of trust, application for loan, and any
communications related to your acquisition of a loan for $225,000.00 from EPT Gray
Properties.

64.  This Request has been quashed by Order Modifying Subpoena entered by Judge H.
Christopher Mott dated October 26, 2017.  (copy attached).

65.  Produce all documents related to your acquisition of the real property located at 350 Rocky
Pointe, including the deed, any deed of trust, any promissory note, and any contract for the
purchase of said real property.

66.  The job file for any construction that you or one of your companies has performed on the real
property located at 350 Rocky Pointe, including subcontracts, invoices for purchases of
materials, interim construction financing documents, City of El Paso permits, and job
inspection reports.

67.  Produce all documents related to your acquisition of the real property located at 383 Rocky
Pointe, including the deed, any deed of trust, any promissory note, and any contract for the
purchase of said real property.

68.  The job file for any construction that you or one of your companies has performed on the real
property located at 383 Rocky Pointe, including subcontracts, invoices for purchases of
materials, interim construction financing documents, City of El Paso permits, and job
inspection reports.

69.  Produce all documents related to your acquisition of the real property located at 4049 Tierra
Santa Place, including the deed, any deed of trust, any promissory note, and any contract for
the purchase of said real property.

70.  The job file for any construction that you or one of your companies has performed on the real
property located at 4049 Tierra Santa Place, including subcontracts, invoices for purchases
of materials, interim construction financing documents, City of El Paso permits, and job
inspection reports.

71.  Produce all documents related to your acquisition of the real property located at 6301
Franklin Bluff, including the deed, any deed of trust, any promissory note, and any contract
for the purchase of said real property.

Client Files\00128\06\00101\00511390.WPD          SUBPOENA TO ISSUE

72. The job file for any construction that you or one of your companies has performed on the real property located at 6301 Franklin Bluff, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

73. Produce the promissory note, security agreement, deed of trust, application for loan, and any communications related to your obtaining any loans from High Limited Company.

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

_____ WESTERN _____ District of ____ TEXAS ____

In re TRAVIS RYAN YOUNG                                                   El Paso Division
_____
                Debtor

*(Complete if issued in an adversary proceeding)*                         Case No. __17-30163-hcm__

PAMELA YOUNG                                                             Chapter 7 ____
_____
                Plaintiff
                v.
TRAVIS RYAN YOUNG, Individually and d/b/a Premier Builders  Adv. Proc. No. __17-03010-hcm__
_____
                Defendant

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:   Brittany Young
_____
                *(Name of person to whom the subpoena is directed)*

[x] *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:   See attached Amended Notice of Third-Party Request for Production to Brittany Young.

| PLACE   609 Montana Avenue, El Paso, Texas 79902 | DATE AND TIME   November 16, 2017 @ 3:00 p.m. |
|---|---|

[ ] *Inspection of Premises*: YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   October 26, 2017

CLERK OF COURT

                                          OR   _____

_____                _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

EXHIBIT
"B"

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Pamela Young _____ , who issues or requests this subpoena, are:
Corey W. Haugland, James & Haugland, P.C., 609 Montana Avenue, El Paso, Texas 79902  (915) 532-3911

Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B257H (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: ___Brittany Young_____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.** The court for the district where compliance is required — and also, after a motion is transferred, the issuing court — may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

IT IS HEREBY ADJUDGED and DECREED that the
below described is SO ORDERED.

Dated: October 26, 2017.

_H. Chris Mott_
H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TRAVIS RYAN YOUNG | § | Case No. 17-30163-HCM |
| Debtor. | § | |
| | | |
| PAMELA W. YOUNG | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 17-03010-HCM |
| | § | |
| TRAVIS RYAN YOUNG | § | |
| Defendant. | § | |

---

ORDER MODIFYING SUBPOENA ISSUED
TO BRITTANY YOUNG IN ADVERSARY PROCEEDING NO. 17-03010

On October 26, 2017, the Court conducted a hearing on the Motion to Quash
Third-Party Subpoena to Brittany Young ("Motion")(dkt# 22) filed by Travis Ryan Young
("Defendant") in this adversary proceeding no. 17-03010. A Response to the Motion
(dkt# 25) was filed by Pamela W. Young ("Plaintiff"). Counsel for Defendant and counsel
for Plaintiff appeared at the hearing. Through the Motion, Defendant seeks to quash the
Subpoena to Produce Documents directed to Brittany Young dated September 14, 2017
issued by Plaintiff in this adversary proceeding no. 17-03010 ("Subpoena")

The Court has considered the Motion (including the Declaration of Brittany Young
attached to the Motion), the Response, the Subpoena, the pleadings in this adversary
proceeding, and the arguments of counsel. The Court finds that the Subpoena issued in



EXHIBIT

"C"

1

this adversary proceeding 17-03010 to Brittany Young should be modified as set forth in this Order to require production only of relevant documents that are not unduly burdensome, for the reasons stated by the Court on the record at the hearing.

IT IS THERFORE ORDERED AND NOTICE IS HEREBY GIVEN AS FOLLOWS:

1.     The Motion to Quash Third-Party Subpoena to Brittany Young ("Motion")(dkt# 22) filed by Travis Ryan Young ("Defendant") in this adversary proceeding no. 17-03010 is hereby GRANTED to the extent that the Court will modify the Subpoena as set forth below.

2.     The Subpoena to Produce Documents directed to Brittany Young dated September 14, 2017 issued by Plaintiff in this adversary proceeding no. 17-03010 ("Subpoena") is hereby modified as follows ("Modified Subpoena"):

(A)     Brittany Young shall be required to only produce documents which are dated or created during the time period of January 1, 2015 through January 31, 2017; and

(B)     Brittany Young shall not be required to produce the documents described in paragraphs 6, 9, 10, 15, 16, 46, 48, 56, 58, 59, and 64 of the Subpoena.

3.     By November 16, 2017, Brittany Young shall produce the documents requested by Plaintiff in the Modified Subpoena to counsel for Plaintiff. Brittany Young shall produce the documents by making the documents available for inspection and copying by Plaintiff's counsel by November 16, 2017, or by delivering copies of the documents to Plaintiff's counsel by November 16, 2017.

4.     Counsel for Plaintiff shall immediately cause a copy of this Order together with the Subpoena to be served upon Brittany Young, and shall file proof of service with the Court.

5.     Any relief requested in the Motion which is not expressly granted in this Order is hereby DENIED.

# # #

2

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TRAVIS RYAN YOUNG, | § | Case No. 17-30163-hcm |
| | § | |
| Debtor. | § | |
| | § | |
| _____ | § | |
| | § | |
| PAMELA YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 17-03010-hcm |
| | § | |
| TRAVIS RYAN YOUNG, Individually | § | |
| and d/b/a PREMIER BUILDERS, | § | |
| | § | |
| Defendant. | § | |

## AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF EL PASO | § |

Before me, the undersigned authority, personally appeared Brittany Young, who, being by me duly sworn, deposed as follows:

"My name is Brittany Young. I am over 18 years of age, competent to make this affidavit, and personally acquainted with the facts herein stated: I am the Records Custodian of Brittany Young.

Attached hereto are _____ (____) pages of records. These records are kept by Brittany Young in the regular course of business, and it was the regular course of business of Brittany Young for Brittany Young or representative of Brittany Young with personal knowledge of the act, event or condition recorded to make the record or to transmit information thereof to be included in such record. The record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter.

Attached hereto are _____ (____) pages of records. These records are kept by RUF Developers, LLC or RUF LLC in the regular course of business, and it was the regular course of business of RUF Developers, LLC or RUF LLC for RUF Developers, LLC or RUF LLC or an employee or representative of RUF Developers, LLC or RUF LLC with personal knowledge of the act, event or condition recorded to make the record or to transmit information thereof to be included in such record. The record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter.

Attached hereto are _____ (____) pages of records. These records are kept by PREMIER BUILDING & DESIGN, LLC in the regular course of business, and it was the regular course of business of PREMIER BUILDING & DESIGN, LLC for PREMIER BUILDING & DESIGN, LLC or an employee or representative of PREMIER BUILDING & DESIGN, LLC with personal knowledge of the act, event or condition recorded to make the record or to transmit information thereof to be included in such record. The record was made at or near the time of the act, event or condition recorded or reasonably soon thereafter.

The records attached hereto are exact duplicates of the originals, and it is a rule of Brittany Young, RUF Developers, LLC or RUF LLC and PREMIER BUILDING & DESIGN, LLC to not permit the originals to leave the possession of Brittany Young.

Further, Affiant sayeth naught."

_____

Brittany Young, Individually and as Managing Member of RUF Developers, LLC or RUF LLC and PREMIER BUILDING & DESIGN, LLC

SUBSCRIBED AND SWORN TO BEFORE ME on the _____ day of _____, 2017.

_____

Notary Public in and for the State of Texas

My Commission Expires:



**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 12, 2017.**

_H. Christopher Mott_
_____
H. CHRISTOPHER MOTT
UNITED STATES BANKRUPTCY JUDGE

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| TRAVIS RYAN YOUNG | § | Case No. 17-30163-HCM |
| Debtor. | § | |
| PAMELA W. YOUNG | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 17-03010-HCM |
| | § | |
| TRAVIS RYAN YOUNG | § | |
| Defendant. | § | |

ORDER REGARDING MOTION TO
COMPEL, CIVIL CONTEMPT, AND SANCTIONS (BRITTANY YOUNG)

On December 12, 2017, the Court conducted a hearing on the Motion to Compel, for Order of Civil Contempt, and for Sanctions Against Brittany Young for Failure to Comply With Subpoena ("Motion")(dkt# 38) filed by Pamela Young ("Plaintiff"). Ms. Brittany Young did not appear at the hearing, although she was provided with notice of the hearing and the Motion. Mr. Carlos Miranda appeared on behalf of Ms. Brittany Young, and as counsel for Defendant. Mr. Corey Haugland appeared as counsel for Plaintiff.

Through the Motion, Plaintiff seeks to compel Ms. Brittany Young to produce documents in accordance with the Order of the Court entered on October 26, 2017 (dkt# 30)("Prior Order") and the Subpoena to Produce Documents directed to Brittany Young dated October 26, 2017 issued by Plaintiff with the Amended Notice of Third-Party

1



EXHIBIT
P-4

Request for Production ("Subpoena")(dkt# 34). The Prior Order and Subpoena required Ms. Brittany Young to produce documents to Plaintiff by November 16, 2017. Plaintiff also seeks to hold Ms. Brittany Young in civil contempt and sanctions for non-compliance with the Subpoena and the Prior Order of this Court. The Court has considered the Motion, the Subpoena, the Prior Order of the Court, and the statements and arguments of counsel. The Court finds that the following Order should be entered on the Motion.

**IT IS THERFORE ORDERED AND NOTICE IS HEREBY GIVEN AS FOLLOWS:**

1.      The Motion to Compel, for Order of Civil Contempt, and for Sanctions Against Brittany Young ("Motion")(dkt# 38) filed by Pamela Young ("Plaintiff") is hereby GRANTED to the extent set forth below.

2.      By December 27, 2017, Ms. Brittany Young shall produce for inspection and photocopying to Plaintiff's counsel, all documents requested by Plaintiff in the Subpoena and the Prior Order that are within Ms. Brittany Young's possession, custody, or control.

3.      By December 29, 2017, Ms. Brittany Young shall also provide Plaintiff's counsel with a sworn written Response to the Subpoena, which shall set forth, by each specific Document Request in the Subpoena: (a) the responsive documents actually produced by Ms. Brittany Young to Plaintiff's counsel; and (b) which requested documents could not be produced to Plaintiff's counsel because the documents do not exist. Ms. Brittany Young may not respond to the Subpoena by stating that the documents have been or will be produced by some other person.

4.      Ms. Brittany Young has not complied with the Prior Order of the Court requiring Ms. Brittany Young to produce documents. As a result, by December 27, 2017, Ms. Brittany Young shall pay $1,600 in attorney's fees and expenses to Plaintiff's counsel, representing reasonable fees and expenses in filing and presenting the Motion to compel compliance with the Subpoena and Prior Order of the Court.

5.      If by December 27, 2017, Ms. Brittany Young fails to produce the documents required by this Order, or if by December 29, 2017, Ms. Brittany Young fails to provide the sworn Response to the Subpoena required by this Order, then Ms. Brittany Young will be in civil contempt of Court. In such event, Plaintiff will also be entitled to seek additional and further relief and sanctions from the Court against Ms. Brittany Young.

6.      Mr. Carlos Miranda, as counsel for Ms. Brittany Young, shall cause a copy of this Order to be served upon Ms. Brittany Young.

7.      Any relief requested in the Motion which is not expressly granted in this Order is hereby DENIED without prejudice.

# # #

# RFP for Brittany Young delivered on 12/27/2017

## Documents Produced

2. All documents relating to all checking accounts, in your name or your spouse's name, individually or in the name of Premier Builders or Bay Homes or in connection with any other person or persons, including checkbooks, checkbook stubs, monthly statements, canceled checks and deposit slips, whether the accounts are current or may have been closed; This includes but is not limited to your checking and savings account at Wells Fargo Bank, JP Morgan Chase Bank, and First Light Credit Union.

-Produced Wells Fargo Checking  account 5026563527 for the following months:

2015: January, February, March, May, June, July, October, November, December

2016: January, February, March, April, May, June, August, September

5. All documents relating to federal or state income tax returns together with the Form W-2s, Form 1099s, schedules and worksheets thereof and all other papers, and memoranda referring to any adjustment made in connection therewith for the previous four (4) years (2013, 2014, 2015, and 2016)

-Produced 2015 1040A Tax return processed by H&R Block.

-Produced 2016 1040 tax return,  schedule C, and schedule SE, 1099s

7.All documents relating to deeds or conveyances of real property in your name or your spouse's name, individually or jointly, or in connection with any other person or persons, or of which you or your spouse, individually or jointly, are the legal beneficiary or equitable owner or have any interest therein;

-Produced Wraparound warranty deed with vendor's lien for Mariposa home (this is where they live).

-2013 Infinity G37 title

-First Light FCU Loan Liner for the 2012 Audi Q5, account 9656510, on 2/24/16 for $24,766.86

8. All documents relating to monies received and being presently received by you or your spouse from all sources, including but not limited to salaries, wages, earnings, drawings, dividends, bonuses, sick pay, pension or retirement funds, loans, family assistance, gifts, monetary gifts, or reimbursed expenses, for the preceding four (4) years since January 1, 2013.

Produced 4 checks written to Premier Builders and Design LLC from Keith Young.  The 4 checks are as follows: #2080, 4/25/16, $45,000; #2106, 8/7/16, $50,000; #2116, 9/19/16, $50,000; #2133, 11/13/16, $50,000



EXHIBIT

P-5

11.All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by you or your spouse, individually or jointly, including but not limited to Premier Builders or Bay Homes, or in conjunction or partnership with any other individual or individuals and/or records for any corporation which you or your spouse, individually or jointly, hold stock directly or indirectly if the corporation records are under the actual or constructive control of you or your spouse, individually or jointly;

- Produced same checks in RFP 8.

12.All documents relating to the title of any assets held by you or your spouse, individually or jointly, or by any companies owned by you or your spouse, whether presently owned by you or your spouse, individually or jointly, or by companies owned by you or your spouse, or previously transferred within the preceding four (4) years;

Produced the same documents in RFP 7. This is the second time produced the same documents.

13.All documents relating to bills and/or purchase price for items which you claim to be Premier Builders' or Bay Homes' business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shows, designer clothing, watches, or any item of personally having a price of $500.00;

Produced the same documents in RFP 7. This is the third time produced the same documents.

14.All documents relating to bills and/or purchase price for items which you claim to be your wife's separate property or records concerning the acquisition of same;

Produced the same documents in RFP 7. This is the fourth time they produced the same documents.

17.All documents relating to financial statements together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Keith Young, Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years; and

Produced the same documents in RFP 7. This is the fifth time they produced the same documents for the 2013 Audi Q5 Loan liner. Produced a primary account for the loan from Jan 1, 2014 – Jan31, 2017. Produced account balance at FLFCU which part was hand written showing $5.00 balance.

19.All monthly credit card statements, including but not limited to the monthly statements for Barclay Card U.S., American Express,  Bank of America, JP Morgan Chase Bank and Citi Cards.

-Produced American Express Account summary and the following statements:

2015: March, May, September

2016: January, March, May

2017: January

-Produced Chase credit card account number 4147201238689326 for the following dates based on due date on the billing:

2015: Feb., March, April, May, June, July, August, Sept., October, Nov., Dec

2016: Jan., Feb., March, April, May, June, July, August, Sept, October, Nov., Dec

2017: Jan, Feb

-Produced statements for the Barclaycard account ending 6615

2015: July, August, Sept, Oct, November, December

2016: Jan, Feb, March, April, May, June, July, August, Sept, Oct, Nov, Dec

2017: Jan, February


21. Any checking account statements for the Debtor, his wife or joint statements for the Debtor and his wife, including check register for Premier Builders or Bay Homes.

-Produced same checking account information from RFP 2

-Produced Wells Fargo Checking account 5026563527 for the following months:

2015: January, February, March, May, June, July, October, November, December

2016: January, February, March, April, May, June, August, September


22.Your Texas driver's license and social security card.

Produced Drivers license only


24. All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC (or Premier Builders LLC);

-Produced the Wells Fargo checking account for Premier Builders and Design LLC, account # 1304801747 for the following months:

2016: February, March, April, May, June, July, August, September, October, November, December

2017: January

-Produced checks from dated for the following months

2016: June, July, August, September, October, November, December

29.Any checking account statements for Premier Builders & Design, LLC ( or Premier Builders LLC), including a check register for Premier Builders & Design, LLC ( or Premier Builders LLC).

Produced the same information as RFP 24.

31.An inventory of vehicles, tools and equipment utilized by Premier Builders & Design, LLC ( or Premier Builders LLC)in its business.

Response: 2008 Ford F-250, 2012 Audi Q5, 2013 Infiniti G37, no other equipment, work pefomed by subcontractors

33.All documents relating to bills and/or purchase price for items which you claim to be  for Premier Builders & Design, LLC ( or Premier Builders LLC) business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shows, designer clothing, watches, or any item of personalty having a price of $500.00;

Produced the same information as RFP 24 and 29.  So they produced the same information 3 times.

34.  34.All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC ( or Premier Builders LLC)  ;

Produced the same information as RFP 24, 29, 33.  So they produced the same information 4 times.

35.All documents relating to financial statements, including any financial statements ever prepared for RUF Developers, LLC  or RUF LLC,  together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Keith Young, Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years; and

Produced same checks in RFP 24

41.  41.An inventory of vehicles, tools and equipment utilized by RUF Developers, LLC  or RUF LLC in its business. If acquired since January 1, 2016, producer the purchase order, bull of sale, credit card receipt or any other documents memorializing the purchase.

2008 Ford F-250, 2012 Audi Q5, 2013 Infiniti G37

43.All documents relating to bills and/or purchase price for items which you claim to be  for RUF Developers, LLC  or RUF LLC business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shows, designer clothing, watches, or any item of personalty having a price of $500.00;

Produced same checks from Keith Young in RFP 8.

44. An itemized list of items purchased to build or renovate 714 Montoya Oak Lane and its swimming pool, 356 Silver Star, the Las Cruces home (Country Cube Estates #3, PLT #4, Lot 5, Block 112) and 354 Rocky Pointe.

Produced 354 Rockypointe Budget that appears to be incomplete, Itemized list for the Las Cruces home

47. Documents relating to any loans provided to Travis Young, Brittany Young, Premier Builders, Premier Builders & Design, LLC, Bay Homes, Premier Builders, LLC, RUF Developers, LLC, or RUF LLC for the purchase of lots and construction materials. Provide any documents which prove that any of the loans at issue have been paid back to the lender (or not).

-Produced a letter from Keith Young concerning the payment of loan for the Las Cruces Home. He states there is no interest due. I believe that he just created this letter. Produced same Las Cruces Itemized list from RFP 44, and the same checks produced from Keith.

50. All documents relating to federal or state income tax returns together with the Form W-2s, Form 1099s, schedules and worksheets thereof and all other papers, and memoranda referring to any adjustment made in connection therewith for the previous four (4) years (2013, 2014, 2015, and 2016). This also includes the invoices and bills which support the business expenses claimed in your tax returns.

    -Produced 2015 1040A Tax return processed by H&R Block.

    -Produced 2016 1040 tax return, schedule C, and schedule SE, 1099s

51. All documents relating to monies received and being presently received by you from any family member or any third party, including but not limited to salaries, wages, earnings, drawings, dividends, bonuses, sick pay, pension or retirement funds, loans, family assistance, gifts, monetary gifts, or reimbursed expenses, since January 1, 2013.

Produced same checks in RFP 8. This is the third time.

54. All credit card bills and related documents since January 1,2016.

Produced same documents as RFP 19

55. All retail installment contracts, purchase orders, contracts and/or certificates of title related to any automobile, truck, or construction equipment purchases by you or any company owned by you since January1, 2015.

Produced Federal Light FCU loan liner

57. Produce documents reflecting any payments made on these student loans since January 1, 2014.

Produced Wells Fargo Student loan payments

61. Produce all documents related to your acquisition of real property located at 354 Rocky Pointe, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

Produced Deed of Trust from Keith Young on July 25, 2016 for $659,000. Produced Deed of Trust on March 9, 2016 from High Mountain Limited.

62. The job file for any construction that you or one of your companies has performed on the real property located at 354 Rocky Pointe, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

Produced the same checks from Keith Young, the same budget from 354 Rocky Pointe. Produced the Planning and inspection Conditional new Residential permit.

65. Produce all documents related to your acquisition of real property located at 350 Rocky Pointe, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

Produced deed of trust from High Mountain Limited dated 11/18/16 for $110,000, the Promissory note and the Purchasers statement.

73. Produce the promissory note, security agreement, deed of trust, application for loan, and any communications related to your obtaining any loans from High Limited Company.

Produced the Deed of Trust dated 11/18/2016 for $110,000 and 3/9/2016 for $100,000.


## Documents that were not produced

1. All documents relating to savings bank books, records, accounts and memoranda, current as well as those that may have been canceled, whether in your name or your spouse's name, individually or jointly, or in connection with any other person or persons. This includes but is not limited to your checking and savings account at Wells Fargo Bank, JP Morgan Chase Bank, and First Light Credit Union.

Nothing produced they gave the checking account information in place of the savings account. The checking account information was given twice, for some months 3 times and one month was given 4 times.

I could see that Brittaney transferred money from her Wells Fargo checking, 5026563527 to her savings. I could also see many withdrawals from the Wells Fargo Business account.

2. All documents relating to all checking accounts, in your name or your spouse's name, individually or in the name of Premier Builders or Bay Homes or in connection with any other person or persons, including checkbooks, checkbook stubs, monthly statements, canceled checks and deposit slips, whether the accounts are current or may have been closed; This includes but is not limited to your checking and savings account at Wells Fargo Bank, JP Morgan Chase Bank, and First Light Credit Union.

-Did not produce from Wells Fargo Checking account 5026563527 for the following months:

2015: April, August, September

2016: July, October, November, December

-Did not produce 2013, 2014, and January 2017

-Did not produce checkbooks, checkbook stubs, monthly statements, canceled checks and deposit slips.

3. All documents relating to stock certificates, bonds, or other securities in your name or your spouse's name, individually or jointly, or in connection with any other person or persons, or

which may be held in an account for you, individually, or in the name of Premier Builders or Bay Homes or in conjunction with any other person or persons in any corporation;

Response: None

4. All documents relating to stock brokerage accounts in your name or your spouse's name, individually or jointly, or in the name of Premier Builders or Bay Homes or in connection with any other person or persons, including but not limited to, books, records, accounts, monthly statements, statements of transactions and all other papers and memoranda thereof;

Response:None

5. All documents relating to federal or state income tax returns together with the Form W-2s, Form 1099s, schedules and worksheets thereof and all other papers, and memoranda referring to any adjustment made in connection therewith for the previous four (4) years (2013, 2014, 2015, and 2016)

-Did not produce 2013 and 2014 tax return

-Did not produce any W-2s

-The 2016 tax return looks like it is fake. On schedule C they forgot to fill out the SSN and the EIN. For schedule SE, page 2, the font is different and the numbers are exactly the same as Travis's tax return.

6. Quashed

7.All documents relating to deeds or conveyances of real property in your name or your spouse's name, individually or jointly, or in connection with any other person or persons, or of which you or your spouse, individually or jointly, are the legal beneficiary or equitable owner or have any interest therein;

-Did not produce any deeds in the LLCs name.

8. All documents relating to monies received and being presently received by you or your spouse from all sources, including but not limited to salaries, wages, earnings, drawings, dividends, bonuses, sick pay, pension or retirement funds, loans, family assistance, gifts, monetary gifts, or reimbursed expenses, for the preceding four (4) years since January 1, 2013.

-No family assistance was provided

-No information from draws to Premier Builders DBA Travis Young were provided

-Did not produce HUD-1s for money received

9.Quashed

10.Quashed

11.All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by you or your spouse, individually or jointly, including but not limited to Premier Builders or Bay Homes, or in conjunction or partnership with any other individual or individuals and/or records for any corporation which you or your spouse, individually

or jointly, hold stock directly or indirectly if the corporation records are under the actual or constructive control of you or your spouse, individually or jointly;

- Did not produce books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, and canceled checks relating to any business engaged in or owned by you or your spouse, individually or jointly

12. All documents relating to the title of any assets held by you or your spouse, individually or jointly, or by any companies owned by you or your spouse, whether presently owned by you or your spouse, individually or jointly, or by companies owned by you or your spouse, or previously transferred within the preceding four (4) years;

- Did not produce titles to the two trucks.

13. All documents relating to bills and/or purchase price for items which you claim to be Premier Builders' or Bay Homes' business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shows, designer clothing, watches, or any item of personally having a price of $500.00;

-Did not produce anything but 2 vehicles and their house.

15. Quashed

16. Quashed

17. All documents relating to financial statements together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Keith Young, Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years; and

- Did not produce any loan documents with the exception of the 2012 Audi loan.

18. All documents relating to debts which are owed to you or your spouse, individually or jointly, including but not limited to, promissory notes, IOU notes, and/or accounts receivable

Response: None

19. All monthly credit card statements, including but not limited to the monthly statements for Barclay Card U.S., American Express, Bank of America, JP Morgan Chase Bank and Citi Cards.

- Did not produce Capital One credit card statements and I have seen payments to this card.

-Missing statements for the Barclaycard account ending 6615

2015: January, February, March, April, May, June

-Missing all of 2013 and 2014 for all credit cards

20. All contracts or agreements or documents memorializing the business relationship between Travis Young, individually and d/b/a Premier Builders or d/b/a Bay Homes and its customers including but not limited to Daniel L. Fink, R. W. Schwartz, Jesus Reza Gutierrez, Rebeca Wisbrun, Jose L. Macias-Flores,

and Keith Young. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between Brittany Young, individually and d/b/a Premier Builders and the customer.

Response: Respondent Brittany Young has not ever had a business relationship with these entities or individuals.

-Did not produce any contracts or agreements for any customers and business relationships with Keith Young. She has had several business tractions but has not produced them.

22.Your Texas driver's license and social security card.

Produced Driver's license only, she did not produce her social security card

23. Your homeowner's or renter's insurance polity including all riders.

Response: None

24. All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC (or Premier Builders LLC);

- Did not produce bank statement showing the deposit of the $73,000 that Keith Young claims he gave a cashier check. There must be another account they are not producing.

- Did not produce checks from the following months from the Wells Fargo Business account for Premier Builders and Design LLC

2016: February, March, April, May,

2017: January

-Did not produce books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks

25.All documents relating to financial statements, including any financial statements ever prepared for Premier Builders & Design, LLC (or Premier Builders LLC), together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Keith Young, Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years; and

Response: None

-Did not produce anything, their claim is not logical.

25.All documents relating to financial statements, including any financial statements ever prepared for Premier Builders & Design, LLC (or Premier Builders LLC), together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Keith Young, Kathleen

Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years; and

Response: None

-Did not produce anything, their claim is not logical.

26.All contracts or agreements or documents memorializing the business relationship between Premier Builders & Design, LLC (or Premier Builders LLC), and its customers. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between Premier Builders & Design, LLC (or Premier Builders LLC), and the customer, including but not limited to Daniel L. Fink, R. W. Schwartz, Jesus Reza Gutierrez, Rebeca Wisbrun, Jose L. Macias-Flores, and Keith Young.

Response: None

-Did not produce anything, their claim is not logical.

27.The general ledger for Premier Builders & Design, LLC ( or Premier Builders LLC).

Response: None

-Did not produce anything, their claim is not logical.

28.The accounts receivable ledger for Premier Builders & Design, LLC ( or Premier Builders LLC).

Response: None

-Did not produce anything, their claim is not logical.

29.Any checking account statements for Premier Builders & Design, LLC ( or Premier Builders LLC), including a check register for Premier Builders & Design, LLC ( or Premier Builders LLC).

- Did not produce bank statement showing the deposit of the $73,000 that Keith Young claims he gave a cashier check. There must be another account they are not producing.

- Did not produce checks from the following months from the Wells Fargo Business account for Premier Builders and Design LLC

2016: February, March, April, May,

2017: January

30.All form 940s and Form 941s filed for the for Premier Builders & Design, LLC ( or Premier Builders LLC), since January 1, 2014

Response: None

31.An inventory of vehicles, tools and equipment utilized by Premier Builders & Design, LLC ( or Premier Builders LLC)in its business.

He is missing his new Ford Truck.

32.A copy of any renditions submitted by you for Premier Builders & Design, LLC ( or Premier Builders LLC) business assets to the El Paso Central Appraisal District.

Response: None

33.All documents relating to bills and/or purchase price for items which you claim to be for Premier Builders & Design, LLC ( or Premier Builders LLC) business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shows, designer clothing, watches, or any item of personalty having a price of $500.00;

Produced the same information as RFP 24 and 29. So they produced the same information 3 times.

Did not produce anything new, their claim is not logical.

34. 34.All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC ( or Premier Builders LLC) ;

Produced the same information as RFP 24, 29, 33. So they produced the same information 4 times.

Did not produce anything new, their claim is not logical.

35.All documents relating to financial statements, including any financial statements ever prepared for RUF Developers, LLC or RUF LLC, together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Keith Young, Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years; and

Produced same checks in RFP 24

Did not produce anything new, their claim is not logical.

36.All contracts or agreements or documents memorializing the business relationship between RUF Developers, LLC or RUF LLC , and its customers. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between RUF Developers, LLC or RUF LLC, and the customer

Response: None

37.The general ledger for RUF Developers, LLC or RUF LLC.

Response: None

38.The accounts receivable ledger for RUF Developers, LLC or RUF LLC.

Response: None

39.Any checking account statements for RUF Developers, LLC or RUF LLC, including a check register for RUF Developers, LLC or RUF LLC.

Response: None

40.All form 940s and Form 941s filed for the for RUF Developers, LLC or RUF LLC r, since January 1, 2014

Response: None

41. 41.An inventory of vehicles, tools and equipment utilized by RUF Developers, LLC or RUF LLC in its business. If acquired since January 1, 2016, producer the purchase order, bull of sale, credit card receipt or any other documents memorializing the purchase.

He is missing his new Ford Truck.

42. 42.A copy of any renditions submitted by you for RUF Developers, LLC or RUF LLC business assets to the El Paso Central Appraisal District.

Response: None

43.All documents relating to bills and/or purchase price for items which you claim to be for RUF Developers, LLC or RUF LLC business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shows, designer clothing, watches, or any item of personalty having a price of $500.00;

Did not produce documents for lots purchased under RUF developers

44. An itemized list of items purchased to build or renovate 714 Montoya Oak Lane and its swimming pool, 356 Silver Star, the Las Cruces home (Country Cube Estates #3, PLT #4, Lot 5, Block 112) and 354 Rocky Pointe.

The lists produced are not complete and not detailed.

45.Provide a copy of the Retail Installment Contracts and any related financing documents associated with the purchase of your automobiles and trucks or the purchase of any vehicles in the name of one of your businesses.

Response: None

Missing information on new Ford Truck

46.Quashed

47.Documents relating to any loans provided to Travis Young, Brittany Young, Premier Builders, Premier Builders & Design, LLC, Bay Homes, Premier Builders, LLC, RUF Developers, LLC, or RUF LLC for the purchase of lots and construction materials. Provide any documents which prove that any of the loans at issue have been paid back to the lender (or not).

Did not produce information from all loans that were given to the companies.

48.Quashed

49.Your job filed for all properties constructed by your or any company owned by you since January 1, 2016. That includes all invoices related to the construction. That includes all subcontracts related to the

construction. That includes all closing documents, including the HUD-1 from the closing on the sale of any properties by you or any company owned by you.

Response: RUF LLC – None

-Did not produce information from all companies concerning this request.

50.All documents relating to federal or state income tax returns together with the Form W-2s, Form 1099s, schedules and worksheets thereof and all other papers, and memoranda referring to any adjustment made in connection therewith for the previous four (4) years (2013, 2014, 2015, and 2016). This also includes the invoices and bills which support the business expenses claimed in your tax returns.

-Did not produce 2013 and 2014 tax return

-Did not produce any W-2s

-Did not produce invoices and bills which support the business expense.

-The 2016 tax return looks like it is fake. On schedule C they forgot to fill out the SSN and the EIN. For schedule SE, page 2, the font is different and the numbers are exactly the same as Travis's tax return.

51.All documents relating to monies received and being presently received by you from any family member or any third party, including but not limited to salaries, wages, earnings, drawings, dividends, bonuses, sick pay, pension or retirement funds, loans, family assistance, gifts, monetary gifts, or reimbursed expenses, since January 1, 2013.

-No family assistance was provided

-No information from draws to Premier Builders DBA Travis Young were provided

-Did not produce HUD-1s for money received

52.All documents relating any agreement with your husband, Travis Young, concerning marital property, separate property or the division of your income or assets during your marriage.

Response: None

53.Your homeowner's insurance policy including all riders for the years 2015 and 2016.

Response: None

54.All credit card bills and related documents since January 1,2016.

- Did not produce Capital One credit card statements and I have seen payments to this card.

55.All retail installment contracts, purchase orders, contracts and/or certificates of title related to any automobile, truck, or construction equipment purchases by you or any company owned by you since January1, 2015.

Missing new Ford Truck

56.Quashed

57.Produce documents reflecting any payments made on these student loans since January 1, 2014.

Did not produce all student loans.  Her checking account shows more.

58.Quashed

59.Quashed

60.Produce all documents memorializing any compensation paid to Travis Young for work he has performed for you or any of your business entities.

Response: None

61. Produce all documents related to your acquisition of real property located at 354 Rocky Pointe, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

Did not produce promissory note from Keith Young.  Did not produce loan from EPT Gray Properties. Did not produce contract of sale.

62.The job file for any construction that you or one of your companies has performed on the real property located at 354 Rocky Pointe, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

Did not produce the job file including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

63.Produce the promissory note, security agreement, deed of trust, application for loan, and any communications related to your acquisition of a loan for $225,000 from EPT Gray Properties.

Response: None

This is unbelievable since there are documents on the EP county website.

64.Quashed

66.The job file for any construction that you or one of your companies has performed on the real property located at 350 Rocky Pointe, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

Response: None

Just pulled a new residential permit on 1/10/2018 so they must have floor plans.

67.Produce all documents related to your acquisition of real property located at 383 Rocky Pointe, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

Response: None

This should have been produced

68.The job file for any construction that you or one of your companies has performed on the real property located at 383 Rocky Pointe, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

Response: None

69. Produce all documents related to your acquisition of real property located at 4049 Tierra Santa Place, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

Response: None

70. The job file for any construction that you or one of your companies has performed on the real property located at 4049 Tierra Santa Place, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

Response: None

This is a remodel and addition, should have given information.

71. Produce all documents related to your acquisition of real property located at 6301 Franklin Bluff, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

Response: None

72. The job file for any construction that you or one of your companies has performed on the real property located at 6301 Franklin Bluff including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

Response: None

This home is almost completed and they should have information on this build. The permit was pulled on 5/22/17.

73. Produce the promissory note, security agreement, deed of trust, application for loan, and any communications related to your obtaining any loans from High Limited Company.

Missing documents for 2 other lots on Rocky Pointe.


## Observations

-It appears that Keith and Travis are covering for each other.

-There is a cashier's check that Keith claims he gave Travis on 2/18/2016 for $73,000. We do not have a copy of it. We also do not have an account where it was deposited. This means there is another account they are not disclosing.

-Keith wrote a memo to Premier Builders and Design LLC requesting his loan money with no interest. This is an unbelievable document. I believe he wrote it to cover for him telling you in writing that he did not receive any interest.

-They both produced the exact checks. It appears that Keith gave them copies to produce and he produced the same ones. We need them processed through Travis's and/or Brittney's accounts.

-They produced a Settlement Statement from American Land and Title Association for the Las Cruces property. It looks like it was falsified. First it is not signed, and second the table does not line up with the footing. It looks like they pasted another document on top. We need the HUD-1 for this property which they did not disclose. We also need the Deed, Deed of Trust and the Promissory note from Keith Young.

-Travis is withdrawing large sums of money many times a week. The summary is listed below:

February 2016 – opened the Premier Builders and Design LLC business checking account with Wells Fargo

March 2016 – 1 withdrawal for **$29,800** (I believe that this was for his truck)

April 2016- 2 withdrawals for a total of **$4,000**

May 2016 – 12 withdrawals for a total of **$4,020**

June 2016 – 12 withdrawals for a total of **$3,600**

July 2016 – 16 withdrawals for a total of **$6,500**

August 2016 – 9 withdrawals for a total of **$5,800**

September 2016 – 13 withdrawals for a total of **$3,800**

October 2016 – 10 withdrawals for a total of **$3,890**

November 2016 – 9 withdrawals for a total of **$3,090**

December 2016- 9 withdrawals for a total of **$5,319**

January 2017- 8 withdrawals for a total of **$3,870**

-I believe they are giving us falsified tax returns. For Brittany's 2016 tax return schedule C has the SSN and EIN numbers blank. It does not show a date or a bank deposit account like she did her last one. Also Schedule SE page 2 has different font and looks like the same one that Travis produced. We need the processed copy.

-They have many insurance companies and they have not produced them all.

Geico Auto, Alliance Premium Finance, Romberg and Sierra Insurance, Orr and Associates.

-They went on a trip to Hawaii in the summer of 2015. I can see this with charges to Brittany's checking account. However, the airline tickets were not purchased through any checking account or credit card that I have seen.

-I can see Capital One credit card payments but did not produce the statements.

- I think we need them to produce documents for all of 2017 and January 2018.

-We need checks with the signature since Travis had them blacked out.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TRAVIS YOUNG, | ) | |
| | ) | |
| Debtor. | ) | Bankruptcy Case No. 17-30163 |
| ————————————— | ) | |
| | ) | |
| PAMELA YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Case No. 17-03010 |
| | ) | |
| TRAVIS YOUNG, | ) | |
| | ) | |
| Defendant. | ) | |

## BRITTANY YOUNG'S SWORN RESPONSES TO THIRD PARTY REQUESTS FOR PRODUCTION

COMES NOW Brittany Young, Third-Party Respondent herein, through her attorneys of

record MIRANDA & MALDONADO, P.C., and hereby submits the following *Sworn Responses*

to *Third-Party Requests for Production* as follows:

### RESPONSES TO REQUESTS FOR DOCUMENTS

1.      All documents relating to savings bank books, records, accounts and memoranda,
current as well as those that may have been canceled, whether in your name or your spouse's name,
individually or jointly, or in connection with any other person or persons. This includes but is not
limited to your checking and savings account at Wells Fargo Bank, JP Morgan Chase Bank, and
First Light Credit Union.

   **RESPONSE: See attached for what is in my possession, custody, or control.**

2.      All documents relating to all checking accounts, in your name individually or
jointly with your spouse's name, or in the name of Premier Builders or Bay Homes or in connection
with any other person or persons, including checkbooks, checkbook stubs, monthly statements,
canceled checks and deposit slips, whether the accounts are current or may have been closed. This
includes but is not limited to your checking and savings account at Wells Fargo Bank, JP Morgan
Chase Bank, and First Light Credit Union.

**EXHIBIT**

P-6

**RESPONSE: See responsive documents attached to Request No. 1.**

**See attached for what is in my possession, custody, or control.**

3.     All documents relating to stock certificates, bonds, or other securities in your name or your spouse's name, individually or jointly, or in connection with any other person or persons, or which may be held in an account for you, individually, or in the name of Premier Builders or Bay Homes or in conjunction with any other person or persons in any corporation.

**RESPONSE: None.**

4.     All documents relating to stock brokerage accounts in your name or your spouse's name, individually or jointly, or in the name of Premier Builders or Bay Homes or in connection with any other person or persons, including but not limited to, books, records, accounts, monthly statements, statements of transactions and all other papers and memoranda thereof.

**RESPONSE: None.**

5.     All documents relating to federal and state income tax returns together with the Form W-2s, Form 1099's, schedules and worksheets thereof and all other papers, and memoranda referring to any adjustment made in connection therewith for the previous four (4) years (2013.2014, 2015, and 2016).

**RESPONSE: See attached for what is in my possession, custody, or control.**

6.     This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

7.     All documents relating to deeds or conveyances of real property in your name or your spouse's name, individually or jointly, or in connection with any other person or persons, or of which you or your spouse, individually or jointly, are the legal beneficiary or equitable owner or have any interest therein.

**RESPONSE: See attached for what is in my possession, custody, or control.**

8.     All documents relating to monies received and being presently received by you or your spouse from all sources, including but not limited to salaries, wages, earnings, drawings, dividends, bonuses, sick pay, pension or retirement funds, loans, family assistance, gifts, monetary gifts, or reimbursed expenses, for the preceding four (4) years since January 1, 2013.

**RESPONSE: See attached for what is in my possession, custody, or control.**

9.     This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

10. This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

11. All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by you or your spouse, individually or jointly, including but not limited to Premier Builders or Bay Homes, or in conjunction or partnership with any other individual or individuals and/or records for any corporation which you or your spouse, individually or jointly, hold stock directly or indirectly if the corporation records are under the actual or constructive control of you or your spouse, individually or jointly.

**RESPONSE: See attached for what is in my possession, custody, or control.**

12. All documents relating to the title of any assets held by you or your spouse, individually or jointly, or by any companies owned by you or your spouse, whether presently owned by you or your spouse, individually or jointly, or by companies owned by you or your spouse, or previously transferred within the preceding four (4) years.

**RESPONSE: See attached for what is in my possession, custody, or control.**

13. All documents relating to bills and/or purchase price for items which you claim to be Premier Builders' or Bay Homes' business or your personal, community, or separate property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shoes, designer clothing, watches, or any item of personally having a price in excess of $500.00.

**RESPONSE: See attached for what is in my possession, custody, or control.**

**Brittany Young has no interest in Premier Builders or Bay Homes.**

14. All documents relating to bills and/or purchase price for items which you claim to be your separate property and records concerning the acquisition of same.

**RESPONSE: See attached for what is in my possession, custody, or control.**

15. This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Molt dated October 26, 2017.

**RESPONSE: No response is necessary.**

16.     This *Request* has been quashed *by Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

17.     All documents relating to financial statements together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Keith Young, Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Binary Investments, Inc., and Citi Cards) for the preceding four (4) years.

**RESPONSE: See attached for what is in my possession, custody, or control.**

18.     All documents relating to debts which are owed to you or your spouse, individually or jointly, including but not limited to, promissory notes, IOU notes and/or accounts receivable.

**RESPONSE: None.**

19.     All monthly credit card statements, including but not limited to the monthly statements for Barclay Card U.S., American Express, Bank of America, JP Morgan Chase Bank and Citi Cards.

**RESPONSE: See attached for what is in my possession, custody, or control.**

20.     All contracts or agreements or documents memorializing the business relationship between Brittany Young, individually and d/b/a Premier Builders or d/b/a Bay Homes and its customers including but not limited to Daniel L. Fink, R. W. Schwartz, Jesus Reza Gutierrez, Rebeca Wisbrun, Jose L. Macias-Flores, and Keith Young. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between Brittany Young, individually and d/b/a Premier Builders and the customer.

**RESPONSE: Respondent Brittany Young has not ever had a business relationship with these entities or individuals.**

21.     Any checking account statements for you, your husband, or joint statements for you and your husband, including a check register for Premier Builders or Bay Homes.

**RESPONSE: See Response to Request No. 1 for Partial Response. Additionally, Bay Homes did not have its own bank account. Brittany Young has not ever had an ownership interest in or access to "Premier Builders" bank accounts.**

**See attached for what is in my possession, custody, or control.**

22.     Your Texas driver's license and social security card.

**RESPONSE: See attached for what is in my possession, custody, or control.**

23.     Your homeowner's or renter's insurance policy including all riders.

**RESPONSE: None.**

24.     All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC (or Premier Builders LLC).

**RESPONSE: See attached for what is in my possession, custody, or control.**

25.     All documents relating to financial statements, including any financial statements ever prepared for Premier Builders & Design, LLC (or Premier Builders LLC), together with the schedules and worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Kathleen Hernandez, Bank of America, JP Morgan Chase Bank, Capital One, Jet Private Lending, Security. LLC, Keith Young and Citi Cards) for the preceding four (4) years.

**RESPONSE: None.**

26.     All contracts or agreements or documents memorializing the business relationship between Premier Builders & Design, LLC (or Premier Builders LLC) and its customers. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between RUF Developers, LLC and the customer.

**RESPONSE: None.**

27.     The general ledger for Premier Builders & Design, LLC (or Premier Builders LLC).

**RESPONSE: None.**

28.     The accounts receivable ledger for Premier Builders & Design, LLC (or Premier Builders LLC).

**RESPONSE: None.**

29.     Any checking account statements for Premier Builders & Design, LLC (or Premier Builders LLC), including a check register for Premier Builders & Design, LLC (or Premier Builders LLC).

**RESPONSE: Please see attached for what is my possession, custody, or control.**

**Also see *Response* to RFP No. 24.**

30. All Form 940's and Form 941's filed for the Premier Builders & Design, LLC (or Premier Builders LLC) business since January 1, 2014.

**RESPONSE: None.**

31. An inventory of vehicles, tools and equipment utilized by Premier Builders & Design, LLC (or Premier Builders LLC) in its business.

**RESPONSE:**

**2008 Ford F-250,**

**2012 Audi Q5**

**2013 Infiniti G37.**

**No other equipment.**

**Work performed by subcontractors.**

32. A copy of any renditions submitted for Premier Builders & Design, LLC's (or Premier Builders LLC's) business assets to the El Paso Central Appraisal District.

**RESPONSE: None.**

33. All documents relating to bills and/or purchase price for items which you claim to be Premier Builders & Design, LLC's (or Premier Builders LLC's) business property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shoes, designer clothing, watches, or any item of personal property having a price in excess of $500.00.

**RESPONSE: See attached for what is my possession, custody or control.**

**Also see *Response* to RFP No. 2.**

34. All documents including but not limited to, books, records, general ledgers, general journals, cash journals, payroll records, purchase and sales journals, petty cash records, bank statements, and canceled checks relating to any business engaged in or owned by Premier Builders & Design, LLC (or Premier Builders LLC).

**RESPONSE: Please see attached for what is my possession, custody, or control.**

**Also see Response to RFP No. 24.**

35. All documents relating to financial statements, including any financial statements ever prepared for RUF Developers, LLC (or RUF LLC), together with the schedules and

worksheets thereof and all other papers, and memoranda for financial statements or loan applications prepared or submitted to any individual or institution or lender (including but not limited to Kathleen Hernandez, Bank of America. JP Morgan Chase Bank, Capital One, Jet Private Lending, Security, LLC, Keith Young and Citi Cards) for the preceding four (4) years.

**RESPONSE: Please see attached for what is my possession, custody, or control.**

**Also see Response to RFP No. 24.**

36.    All contracts or agreements or documents memorializing the business relationship between RUF Developers, LLC (or RUF LLC) and its customers. This request for documentation includes written agreements, quotes, and or written acceptances by the customer confirming the existence of a relationship between RUF Developers, LLC and the customer.

**RESPONSE: None.**

37.    The general ledger for RUF Developers, LLC (or RUF LLC).

**RESPONSE: None.**

38.    The accounts receivable ledger for RUF Developers, LLC (or RUF LLC).

**RESPONSE: None.**

39.    Any checking account statements for RUF Developers, LLC (or RUF LLC), including a check register for RUF Developers, LLC (or RUF LLC).

**RESPONSE: None.**

40.    All Form 940s and Form 941 s filed for the RUF Developers, LLC (or RUF LLC) business since January 1, 2014.

**RESPONSE: None.**

41.    An inventory of vehicles, tools and equipment utilized by RUF Developers, LLC (or RUF LLC) in its business. If acquired since January 1, 2016, produce the purchase order, bill of sale, credit card receipt or any other documents memorializing the purchase.
**RESPONSE:**

**2008 Ford F-250,**

**2012 Audi Q5**

**2013 Infiniti G37**

42. A copy of any renditions submitted for RUF Developers, LL C's ( or RUF LLC's) business assets to the El Paso Central Appraisal District.

**RESPONSE: None.**

43. All documents relating to bills and/or purchase price for items which you claim to be RUF Developers, LLC's (or RUF LLC's) business property and records concerning acquisition of same, including but not limited to trucks, trailers, tools, jewelry, purses, shoes, designer clothing, watches, or any item of personal property having a price in excess of $500.00.

**RESPONSE: See attached for what is my possession, custody or control.**

**Checks for two (2) Lots.**

44. An itemized list of items purchased to build or renovate 724 Montoya Oak Lane and its swimming pool, 356 Silver Star, the Las Cruces home (Country Club Estates#3, PLT#4, Lot *5*, Block 112) and 354 Rocky Pointe.

**RESPONSE: See attached for what is my possession, custody, or control.**

45. Provide a copy of the Retail Installment Contracts and any related financing documents associated with the purchase of your automobiles and trucks or the purchase of any vehicles in the name of one of your businesses.

**RESPONSE: None.**

46. This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

47. Documents relating to any loans provided to Travis Young, Brittany Young, Premier Builders, Premier Builders & Design, LLC, Bay Homes, Premier Builders, LLC, RUF Developers, LLC, or RUF LLC for the purchase of lots and construction materials. Provide any documents which prove that any of the loans at issue have been paid back to the lender (or not).

**RESPONSE: Please see what is my possession, custody, or control.**

48. This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

49. Your job file for all properties constructed by you or any company owned by you since January 1, 2016. That includes all invoices related to the construction. That includes all

subcontracts related to the construction. That includes all closing documents, including the HUD-1 from the closing on the sale of any properties by you or any company owned by you.

**RESPONSE: RUF LLC – None.**

50.     All documents relating to federal and state income tax returns specifically including the Form W-2s, Form 1 099s, schedules and worksheets thereof and all other papers, and memoranda referring *to* any adjustment made in connection therewith for the previous four (4) years (2013, 2014, 2015, and 2016). This also includes the invoices and bills which support the business expenses claimed in your tax returns.

**RESPONSE: Please see what is my possession, custody, or control.**

**See also *Response* to RFP No. 5.**

51.     All documents relating to monies received and being presently received by you from any family member or any third party, including but not limited to salaries, wages, earnings, draws, loans, family assistance, gifts, monetary gifts, or reimbursed expenses since January 1, 2013.

**RESPONSE: Please see what is my possession, custody, or control.**

**See also *Response* to RFP No. 8.**

52.     All documents relating any agreement with your husband, Travis Young, concerning marital property, separate property or the division of your income or assets during your marriage.

**RESPONSE: None.**

53.     Your homeowner's insurance policy including all riders for the years 2015 and 2016.

**RESPONSE: None.**

54.     All credit card bills and related documents since January 1, 2016.

**RESPONSE: Please see what is my possession, custody, or control.**

**See also *Response* to RFP No. 19.**

55.     All retail installment contracts, purchase orders, contracts and/or certificates of title related to any automobile, truck, or construction equipment purchases by you or any company owned by you since January 1, 2015.

**RESPONSE: Please see what is my possession, custody, or control.**

56.    This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 20 1 7.

**RESPONSE: No response is necessary.**

57.    Produce documents reflecting any payments made on these student loans since January 1, 2014.

**RESPONSE: See attached for what is in my possession, custody, or control.**

58.    This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Moll dated October 26, 2017.

**RESPONSE: No response is necessary.**

59.    This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

60.    Produce all documents memorializing any compensation paid to Travis Young for work he has performed for you or any of your business entities.

**RESPONSE: None.**

61.    Produce all documents related to your acquisition of the real property located at *354 Rocky Pointe*, including the *deed*, any *deed of trust*, any *promissory note*, and any *contract* for the purchase of said real property.

**RESPONSE: See attached for what is in my possession, custody, or control.**

62.    The *job file* for any construction that you or one of your companies has performed on the real property located at *354 Rocky Pointe*, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

**RESPONSE: See attached for what is in my possession, custody, or control.**

63.    Produce the *promissory note*, *security agreement*, *deed of trust*, *application for loan*, and any communications related to your acquisition of a *loan* for *$225,000.00* from *EPT Gray Properties*.

**RESPONSE: None.**

64.    This *Request* has been quashed by *Order Modifying Subpoena* entered by Judge H. Christopher Mott dated October 26, 2017.

**RESPONSE: No response is necessary.**

65.     Produce all documents related to your acquisition of the real property located at *350 Rocky Pointe*, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

**RESPONSE: See attached for what is in my possession, custody, or control.**

66.  The *job file* for any construction that you or one of your companies has performed on the real property located at *350 Rocky Pointe*, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

**RESPONSE: None.**

67.     Produce all documents related to your acquisition of the real property located at *383 Rocky Pointe*, including the deed, any *deed of trust*, any *promissory note*, and any contract for the purchase of said real property.

**RESPONSE: None.**

68.  The *job file* for any construction that you or one of your companies has performed on the real property located at *383 Rocky Pointe*, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

**RESPONSE: None.**

69.     Produce all documents related to your acquisition of the real property located at 4049 Tierra Santa Place, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property.

**RESPONSE: None.**

70.     The job file for any construction that you or one of your companies has performed on the real property located at 4049 Tierra Santa Place, including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

**RESPONSE: None.**

71.     Produce all documents related to your acquisition of the real property located at 6301 Franklin Bluff, including the deed, any deed of trust, any promissory note, and any contract for the purchase of said real property

**RESPONSE: None.**

72.     The job file for any construction that you or one of your companies has performed on the real property located at 6301 Franklin Bluff including subcontracts, invoices for purchases of materials, interim construction financing documents, City of El Paso permits, and job inspection reports.

**RESPONSE: None.**

73.     Produce the promissory note, security agreement, deed of trust, application for loan, and any communications related to your obtaining any loans from High Limited Company.

**RESPONSE: See attached for what is in my possession, custody, or control.**

Respectfully submitted,

**MIRANDA & MALDONADO, P.C.**

/s/ Carlos A. Miranda III, Esq.
Carlos A. Miranda III, Esq.
Carlos G. Maldonado, Esq.
5915 Silver Springs, Bldg. 7
El Paso, Texas 79912
(915) 587-5000 (Telephone)
(915) 587-5001 (Facsimile)
**cmiranda@eptxlawyers.com**
**cmaldonado@eptxlawyers.com**

Attorneys for Brittany Young

# VERIFICATION

**STATE OF TEXAS**                    )
                                      )
**EL PASO COUNTY**                    )

Before me, the undersigned notary, on this day personally appeared BRITTANY YOUNG, the Affiant, whose identity is known to me. After I administered an oath, affiant testified as follows:

"My name is BRITTANY YOUNG. I am capable of making this *Sworn Verification*. I have read the *Responses to Third-Party Requests for Production*. The facts stated in it are within my personal knowledge and are true and correct."

BRITTANY YOUNG

Sworn to and subscribed before me by BRITTANY YOUNG on December 29, 2017.

WENDY AVALOS
Notary Public, State of Texas
Comm. Expires 01-18-2021
Notary ID 129271795

Notary Public in and for
the State of Texas

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 29th day of December 2017, I served a true and correct copy of the *Respondent's Sworn Responses to Third-Party Requests for Production* by Hand-Delivery and Electronic Service to the following Parties:

**Plaintiff**
Pamela W Young
c/o Corey W. Haugland, Esq.
James & Haugland, P.C.
609 Montana Avenue
El Paso, TX 79902
(915) 532-3911 (Telephone)
**chaugland@jghpc.com**

**Chapter 7 Trustee**
Ronald E. Ingalls
PO Box 2867
Fredericksburg, TX 78624-1927

/s/ Carlos A. Miranda, Esq.
Carlos A. Miranda, Esq.
Carlos G. Maldonado, Esq.
Attorneys for Brittany Young

IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| TRAVIS RYAN YOUNG, | § | Case No. 17-30163-hcm |
| | § | |
| Debtor. | § | |
| ———————————————— | § | |
| | § | |
| PAMELA YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adversary No. 17-03010-hcm |
| | § | |
| TRAVIS RYAN YOUNG, Individually | § | |
| and d/b/a PREMIER BUILDERS, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING PLAINTIFF'S SECOND MOTION TO COMPEL AND FOR SANCTIONS AGAINST BRITTANY YOUNG

Came on to be considered Plaintiff's Second Motion to Compel and for Sanctions



EXHIBIT

tabbies®  P-7

Against Brittany Young (hereinafter the "Motion"). The Court, after reviewing the Motion and the response filed, if any, as well as the evidence and arguments of counsel finds that the Motion is well taken and should be, in all things, Granted. It is therefore,

**ORDERED, ADJUDGED and DECREED** that Plaintiff's Second Motion to Compel and for Sanctions Against Brittany Young is GRANTED and that Brittany Young is hereby ordered to produce the requested documents as set forth in the Court's December 12, 2017 Order Regarding Motion to Compel, Civil Contempt, and Sanctions (Brittany Young) [Adv. Doc. # 47] **within 14 days of the date of this Order**. It is further,

**ORDERED, ADJUDGED and DECREED** that Brittany Young, pay Plaintiff the amount of $2,050.00 as reasonable and necessary attorney's fees incurred in bringing forth this Motion and for attending hearing on same **within 14 days of the date of this Order**.

Plaintiff shall have all writs and process necessary to collect this fee award.

###

Submitted by:
Corey W. Haugland
State Bar No. 09234200
JAMES & HAUGLAND, P.C.
609 Montana Avenue
El Paso, Texas 79902
Phone: 915-532-3911
FAX: (915) 541-6440